State ex rel. Thompson *v.* Board of Equalization of Washoe County.

THE STATE OF NEVADA ex rel. WILLIAM THOMPSON *v.* THE BOARD OF EQUALIZATION OF WASHOE COUNTY.

No Equalization of Assessment where no Legal Statement Furnished. Where the Central Pacific Railroad Company failed to furnish a proper statement of its taxable property within the time prescribed by law, and in default thereof the assessor placed a valuation thereon which the board of equalization afterwards reduced: *Held*, that the action of the board was unauthorized and should be annulled.

Certiorari—Inadmissible Return—Motion to Strike Out. Where on certiorari to review the proceedings of the board of equalization in reference to the reduction of an assessment against a railroad company, the clerk of the board was directed to certify whether it appeared before the board that the company served a statement of its taxable property within the time prescribed by law; and the clerk returned a certificate that it was proved before the board that such a statement had been furnished within time, but went on to show that his certificate was based upon the sworn statements of others, who composed the board at the time, and not upon his own recollection or the records of the board: *Held*, that such certificate was entirely inadmissible; and on motion it was stricken out.

Certiorari—What Return may Include. Though the return to a writ of certiorari may include, in addition to the record properly so called, such orders and proceedings in the nature of record, and so much of the evidence as may bear upon the question of jurisdiction, it cannot include matter which is neither a part of the record nor of the proceedings before the inferior tribunal, such as affidavits presented to the clerk of such tribunal after the issuance of the writ or his certificate based thereon.

Certificate on Information not Certificate of Fact. A person who certifies to a fact, and in the same certificate states that it is done upon information derived from another, really only certifies to the information and not to the fact.

State ex rel. Thompson *v.* Board of Equalization of Washoe County.

"AMONG THE FILES" SUPPOSED TO MEAN "FILED." Where a clerk on return to a writ of certiorari certified that certain papers transcribed were true and correct copies of original papers " among the files " in his office: *Held,* that though the language was not as definite as it should be, it was sufficient to warrant the conclusion that such papers, being among the files, were themselves filed.

REVENUE LAWS—FAILURE OF RAILROAD TO FURNISH STATEMENT. The statute imposing a penalty upon railroads for failing without legal excuse to furnish to the assessor on demand a statement of their taxable property, (Stats. 1869, 184) does not confer a discretion upon the board of equalization to determine whether there is a legal excuse or not, nor authorize equalization when no such statement is furnished.

"LEGAL EXCUSE" OF RAILROAD TO FURNISH STATEMENTS. The "legal excuse" mentioned in Section 3 of the Act of 1869, requiring railroads to furnish statements of their taxable property, (Stats. 1869, 184) is only to be considered in case of a criminal prosecution as provided for by Section 6 of the Act of 1866, (Stats. 1866, 168) and not in proceedings before the board of equalization. (Stats. 1866, 169, Section 15.)

Certiorari from the Supreme Court to the Board of Equalization of Washoe County.

From the affidavit of the relator, it appears that the effect of the action of the board complained of was to reduce the amount of taxes to be paid by the Central Pacific Railroad Company in that county from $28,723.31 to $14,055.25. The facts material to the decision are fully stated in the opinion.

*Robert M. Clarke* and *L. A. Buckner,* Attorney General, for Relator.

I. The fact upon which the jurisdiction of the board of equalization depended, was the making of a statement by the company.

II. It is admitted that the evidence, so far as the same relates to jurisdictional facts, may be brought up and reviewed ; but it is submitted that the evidence must first have an existence in point of fact, and then appear of record, before it can be certified. If, in point of fact, oral testimony had been heard, proving that a statement of the railroad company's property had been furnished as demanded, still such testimony could not be certified, because not of record nor on file in the office, nor among the papers of the board of equalization. The clerk cannot "transcribe" that which has no

existence.   It is too apparent to need elaboration, that nothing can be certified except that which appears in the record of the proceeding.   2 Harrison, 25.

III.  The distinction (sought to be taken) between "record" and "proceeding" is not sound.  As used in the practice act, "proceeding" means the action taken, matter or thing going on before the tribunal, board or officer exercising judicial functions.  It has the same significance when applied to matters of a judicial character pending before commissioners, as "case" when applied to an action pending in court.   In one sense it may be said to enlarge the technical meaning of record ; but it in no manner enlarges the office of the writ of certiorari.   *Whitney* v. *Board of Fire Delegates,* 14 Cal. 500 ;  2 Ld. Raym. 436 ;  1 Salk. 148 ;  H. Bl. B. 552 ; 5 Binn. 27 ;  8 Green'l, 293 ;  11 Mass. 466 ;  3 Halst. 125 ; *Central Pacific Railroad Co.* v. *Placer County,* 32 Cal. 582.

IV.  The return that the demand of the assessor, etc., were "among the files," etc., was sufficient.   As a matter of fact, papers used before the board of equalization are not required to be filed, except so far as their delivery to the board may be considered a filing. The board is the tribunal acting, not the clerk.   When a paper is delivered to the proper officer, and by him received to · be kept on file, it not only becomes a part of the proceeding, but in strict law is filed.

V.  The question of " legal excuse " can have no  bearing here. Those words, as used in the statute, have application exclusively to the punishment inflicted by Section 6 of the revenue Act of March 1st, 1866.   In the statute referring to matters of equalization, nothing appears of " legal excuse." The powers of the board are the same in all cases—drawn universally from Section 15 of the general law ; and hence it follows that the case at bar falls under that law, so far as it deals with the powers of the board.

*S. W. Sanderson,* for Defendants :

I.  The writ of certiorari brings up for review, not only the written record as kept by the· clerk of the board of commissioners, but in addition the evidence, whether written or oral, so far as the same

relates to jurisdictional facts. *Moerwood* v. *Hollister*, 2 Selden 319 ; *C. P. R. R. Co.* v. *Pearson*, 35 Cal. 258 ; *The New Jersey Railroad and Transportation Co.* v. *Suydam*, 2 Harrison 25 ; *The People* v. *Goodwin*, 1 Selden, 568 ; *The Inhabitants of Mendon* v. *The County Commissioners of Worcester*, 2 Allen, 463 ; *Baldwin* v. *City of Buffalo*, 5 N. Y. 375 ; *Magee* v. *Cutler*, 43 Barb. 239 ; *The People* v. *VanAlstyne*, 32 Barb. 131 ; *Whitney* v. *Board of Delegates of the San Francisco Fire Department*, 14 Cal. 500 ; *Lowe* v. *Alexander*, 15 Cal. 300 ; *Blair* v. *Hamilton*, 32 Cal. 49 ; *Jolley* v. *Foltz*, 34 Cal. 321 ; 2 Stra. 919 ; 2 *Ld. Raymond*, 1375 ; 2 Stra. 996 ; 8 Term, 220, 588 ; 7 East, 389 ; 14 East, 267 ; 24 N. Y. 399.

II. The demand of the assessor and the statement of the railroad company must both be disregarded. The certificate entirely fails to show that they were used, or that they were ever deposited or *filed* with the clerk. This court cannot afford to hold that the mere finding of documents among the papers of a public office is proof of filing. Such a doctrine, for obvious reasons, would open the door to innumerable frauds. The demand of the assessor must not only be excluded from the record, but the existence of any presumption that there was a demand must be denied. The case then stands wholly upon the minutes of the board, which exhibit a case in which there has been neither demand nor statement. That the board could act in such a case is clear, and it is therefore clear that the record shows affirmatively a case in which the board had power to act.

III. But assuming that the demand and statement are to be considered as a part of the record, and the last return of the clerk is not, the board still had jurisdiction. The language of the railroad act, "without legal excuse," confers upon the board *discretionary* power. It gives them jurisdiction in a case even where there has been no statement furnished—much more in a case where there has been one furnished, although not within the precise time required. *People* v. *Dwinelle*, 29 Cal. 635 ; *People* v. *Burney*, 29 Cal. 459 ; *Morley* v. *Elkins*, 37 Cal. 454.

By the Court, Lewis, C. J. :

It appears by the petition in this proceeding, that on the ninth day of August, A. D. 1870, William Thompson, the assessor of the county of Washoe, made demand upon the Central Pacific Railroad Company for a statement of its taxable property within his county ; and required the same to be furnished within fifteen days from the date of the demand.  The assessor having received no statement which in his opinion conformed to the requirements of the statute within the time designated, proceeded on the seventh day of September to assess the property of the company, upon such evidence and information as he could obtain.  Two days afterwards, however, a statement was received by him from the company, which it is admitted is in conformity with the law ; but the time fixed for serving it having expired, and the assessment having been made, the assessor disregarded it.

On the third day of October, A. D. 1870, the board of equalization met, and upon application of the company, reduced the valuation placed upon its property from one million forty-four thousand dollars, to five hundred and eleven thousand ; the assessor, being present before the board, protested against its action in this particular, claiming that as the company had neglected to furnish the required statement within the time designated, the board possessed no authority to equalize or reduce the assessment.   Certiorari was applied for, and the clerk of the board, in obedience to the writ, certified to this court the demand made by the assessor upon the railroad company ; the statement of the superintendent, dated September 9th ; the written protest of the assessor against the action of the board, together with his assessment of the company's property, to be correct copies of papers filed in his office.   He also certifies the assessment roll and the minutes of proceedings taken down at the time.   In addition to this, he sends up an affidavit made by the superintendent, to the effect that on or about the eleventh day of August, A. D, 1870, he received a certain document purporting to be signed by the assessor, Thompson, which was the demand already referred to ; that on the twentieth of the same month he made a statement showing the amount, character and valuation of all property of the Central Pacific Railroad Company,

taxable in the county of Washoe ; that the statement was received
by Thompson on the twenty-second day of August, as appears by
a letter annexed, written by him ; that after the receipt of that
letter, the affiant addressed a letter to Thompson, of which also a
copy was annexed ; that on the second day of September, A. D.
1870, Thompson wrote to the affiant in reply, of which a copy is
likewise attached ; that afterwards, to wit: on or about the eighth
of September, with a view to obviate supposed defects in the state-
ment of August 20th, affiant made a further statement which was
delivered to Thompson on the ninth day of September.    The
first letter mentioned in the affidavit as being received from Thomp-
son, was in substance a notification that the statement was not cor-
rectly made out, and did not conform to the statute ; the letter
written in reply was a request that the assessor point out the de-
fects, which, if any existed, would be corrected by the company ;
the third letter was Thompson's answer pointing out the defects in
the first statement.    This affidavit was made on the sixth day of
April, A. D. 1871, and the facts set out in it are corroborated by
the affidavit of D. W. Haskell, made on the eighth day of the
same month.    In response, also, to an order of this court that he
certify whether it appeared before the board of equalization that
the Central Pacific Railroad Company served a statement on the
assessor of Washoe County within the time allowed by law, the
clerk certifies that it was proved before the board that a statement
or list of the railroad company's taxable property situate in Washoe
County, subscribed and sworn to by the superintendent of the com-
pany, had been furnished to the assessor within the designated time.
But he goes on to state that the certificate thus made by him is
based upon the sworn statement of the persons who composed the
board at the time of the equalization in question—not upon knowl-
edge of his own, or upon anything appearing of record.    As matter
of fact, the certificate was made upon affidavits presented to the
clerk for the purpose of obtaining the certificate, and at the time it
was made.    It is not claimed that the clerk could or did make it
upon his own recollection of the fact or anything in the records of
his office ; but, as shown by an affidavit filed in explanation of the
certificate, it was made solely upon the affidavits presented to him

that such was the fact.   Upon this state of facts, a motion is made
to strike from the clerk's return the affidavit of Towne, with the
letters and statement thereto annexed—together with the affidavit
of Haskell and affidavit of Corning and Weed; thus leaving noth-
ing but the papers which the clerk certifies were filed in his office
with the tax papers of the year 1870, which were the demand by
Thompson, the statement of September 9th made by the railroad
company, the protest of Thompson, and the assignment as made by
him, with the minutes of the proceedings of the board.   In sup-
port of this motion, it is claimed that the writ of certiorari should
bring up only the record of the tribunal whose action is sought to
be reviewed.

Such, in cases of a common law writ, has undoubtedly been held
to be the rule by numerous, if not the majority of decided cases.
There are authorities, however, of no less weight, holding that not
only what is strictly the record is brought up, but also such orders
and proceedings in the nature of record, together with so much of
the evidence as may bear upon the question of jurisdiction, may be
returned to and considered by the court of review.   From decisions
holding this view, and the language of the statute of this state, which
directs the party to whom the writ is directed to certify fully the
record and proceedings, that the same may be reviewed by the
court issuing the writ, it is claimed that all the evidence and pro-
ceedings, whether any minutes were taken of them or not by the
tribunal or officer, should nevertheless be returned and certified;
and hence the certificate by the clerk, based upon affidavits pre-
sented to him after the writ was issued from this court, to the effect
that a certain fact was proven before the board, is properly a part
of the return, and should be considered by this court.   It does not
appear to be claimed by counsel in the brief on file, that the affida-
vit of the superintendent, with the exhibits annexed, and the affida-
vits of Haskell and others, are properly a part of the return.   But
even if it were, nothing is clearer than that they are not so.   They
are neither a part of the record, nor can they be said to be any part
of the proceedings of the board; for it is not pretended that they
were ever before it, or that it knew anything of them at the time it
equalized the tax.   But that the clerk's certificate as to the fact

proven before it should be received by this court as a proper part of the return, is still maintained.

We are clear that this position taken by the learned counsel on behalf of the commissioners is not tenable ; and although we do not think the return should be confined to what is technically the record, still in addition thereto it should only embrace such of the evidence and proceedings bearing on the question of jurisdiction as may have been reduced to writing at the time, or perhaps subsequently, by authority of the board.  This is in harmony with the analogies of the law in similar proceedings, whilst the course contended for by counsel appears to be in direct opposition to them. It would certainly be a novel proceeding to set aside or support the judgment of a tribunal exercising judicial functions upon testimony sought after upon the streets as to what action it may have taken or fact may have been proven before it.  The law is scrupulous in guarding against any misrepresentation of the proceedings of inferior tribunals to the appellate courts reviewing their decisions ; therefore, to guard against it, as a general rule, it accepts no less authoritative evidence of what proceedings were had than the certificate of the judge or tribunal itself whose order is to be reviewed. Thus, by writ of error, the appellate tribunal was strictly confined to the record of the lower court, and upon it the judgment below could neither be sustained or attacked by facts or matter not so appearing of record.  In this way the regularity of the proceedings below were tried upon the case as made out by the tribunal whose action is complained of—for its records are made up by itself or under its supervision, through the medium of its clerk.  Again, nothing less than the signature of the presiding judge is deemed sufficient to authenticate a bill of exceptions taken to review his rulings.  So, also, as to statements on appeal—when allowed by statute, they are almost uniformly required to be approved by the court or judge whose rulings are to be reviewed ; or, what is deemed equivalent, must be agreed to as being correct by the attorneys. Indeed, we know of no case where the judgment or proceedings of courts can be set aside by an appellate tribunal upon no better or more authoritative showing of the action at the trial than the testimony of a bystander.

Surely, no court of review would take the affidavit or testimony of a person although knowing the fact, as to what evidence was admitted or rejected, or what was the ruling upon this question or that by the court below, and upon that evidence determine whether the court whose action it is reviewing proceeded correctly or not. Why move so upon review by certiorari? There is no reason against such practice in the cases mentioned, that will not apply with equal force to a review in cases of this kind. We know of no reason why the proceedings to be reviewed under this writ should not be presented to the court above in a manner equally authentic as in the analogous proceedings mentioned. It is no less essential that there should be no misrepresentation of the action or rulings to be reviewed upon this writ, than in cases of review upon any other. But in this case, the fact that the evidence in question was presented to the board is not authenticated by proof equal to that of the affidavit of a person who was cognizant of the fact. The clerk certifies that the evidence was presented to the board, but also states that his certificate is based, not upon his own knowledge of the fact, but upon an affidavit of a person whom he also certifies was one of the county commissioners at the time of the equalization. Such a certificate is certainly not of equal weight with the affidavit itself, for it is simply the clerk's interpretation of the affidavit. A very different construction might possibly be placed upon it, if presented to this court for action upon it. Hence the reason for the rule, that when a fact is of record the proper evidence of it is a copy of the record duly authenticated, the officer not being allowed to place his own interpretation upon it, and make the certificate accordingly. As has already been said, we do not think the affidavit itself would be admissible for the purpose sought, much less the mere certificate of the clerk as to its contents, for legally that is all the certificate amounts to.

A practice, therefore, so utterly out of harmony with all similar proceedings should not be upheld in cases of certiorari, unless clearly sanctioned by the uniform practice of the courts, or the clear language of statute. The decisions relied on do not sustain it. Those cited, as we understand them, do not uphold or even suggest such practice. Generally they only announce the rule, that the court

will look into the evidence in the return for the purpose of determining the question of jurisdiction. This is what was held in the case of *Whitney* v. *The Board of Delegates of San Francisco Fire Department*, 14 Cal. 500. The English cases, *Rex* v. *Clark*, 8 Term, 220; *Rex* v. *Smith*, Id. 588; *King* v. *Crisp*, 7 East; *King* v. *Chandler*, Id. 627, only hold that in cases of summary conviction, the court of review will look into the evidence. But it was the duty of the magistrates in such cases to reduce all the evidence to writing and make return of it with, and as a part of, the record. In *Mullins* v. *The People*, 24 New York, it was only held that a common law certiorari to review a summary conviction under a penal statute, brought up not only questions affecting the jurisdiction of the magistrate and the regularity of his proceedings, but the question whether there was any evidence to warrant the conviction, and that in such cases the evidence must appear on the face of the record or the conviction will be quashed.

The question here involved was not made nor suggested in any of the cases mentioned. There is certainly no doubt, if the law requires an officer or court to reduce the evidence taken before it to writing, and it is done, which was the fact in all the English cases referred to, it might properly be embodied in the return to the writ. And the other cases only hold that the court of review will look into the evidence for certain purposes. So we have frequently held. 5 Nev. 317. But when it is said the appellate court will review the evidence, it is only to be understood as referring to such evidence as may *properly* be returned or certified. There was no question in any of the cases as to whether evidence not reduced to writing, or of which no minute whatever was kept, would be reviewed upon a mere certificate that it was given. In *King* v. *Barker*, 1 East, 186, which is claimed to be directly in point, it was held that a magistrate was authorized to make return to a writ of certiorari of a conviction in a more formal shape than that in which it was first drawn up, and of which a copy had been delivered to the party convicted by the magistrate's clerk; the conviction returned being fully warranted by the minutes taken at the time. "It is a matter of constant experience," says Lord Kenyon, "for magistrates to take minutes of their proceedings

without attending to the precise form of them at the time when they pronounce their judgment, to serve as memoranda for them to draw up a more formal statement of them afterwards to be returned to the sessions, and it is by no means unusual to draw up the conviction in point of form after the penalty has been levied under the judgment." It will be seen, nothing is decided in the case except that it was proper for the magistrate to draw up his proceedings in formal shape from minutes taken at the time of trial, before making return of them in answer to certiorari. There the magistrate simply wrote out that in a more formal manner, which was in substance already a part of his record. It is the daily practice now, as it was at the time of the decision, for magistrates and the clerks of courts to make up their records in form after the close of the case or proceeding, from minutes taken at the time. It is not expected that the records will be finally written up as the proceedings progress in the case, for that is generally impossible ; hence, reasonable time should be given to put them in form, and that is all that was held in the case of *King v. Barker*. The record was substantially made up at the time of the conviction, and was only afterwards elaborated and put in legal form. It was not pretended that there was no record of the facts certified until the writ issued. It does not, therefore, seem to be a case sustaining a certificate of a fact by a clerk who has no minutes or record upon which to make it, but only information obtained from other persons.

In the case of the *New Jersey Railroad and Transportation Company* v. *Suydam*, 2 Harrison's R. 25, affidavits were received by the Supreme Court, and upon them the award of the commissioners was set aside, although evidence in *support* of it was refused upon the ground that it should have been sustained by the record itself. This might very well be done ; for if the proceedings of the commissioners were not what might be strictly called record, evidence might be received to establish a want of jurisdiction—that being for the purpose of showing that it was not record, as it could not be so considered under some authorities, if the court making it acted without jurisdiction. In such case, if the court of review has the authority to hear evidence *dehors* the record at all, it might receive it for that purpose. But a different rule seems to govern

when it is sought to *sustain* the jurisdiction below by such evidence. This appears to be the view taken in that case; so far as it bears on the question here in hand, it is directly opposed to the position taken by counsel for the defendant. The Chief Justice in his opinion (page 30) says: " Among several objections apparent on the face of this record, there is only one which I shall notice. It is this: That the commissioners have assessed damages for running, making and maintaining a fence, without showing that the lands of the defendant, through which the road runs, are improved lands. If they are not *improved* lands, (whatever that expression may mean) the commissioners have exceeded their authority; they have gone beyond their jurisdiction; and their proceedings, so far at least as relates to that matter, are illegal and void. It is no answer to this objection to say, nor even to prove by evidence *dehors* the record, that the lands in question were *improved* lands. That fact may be, and probably is so, but it must appear on the face of the record, or else the record will be incomplete. We cannot put such supplementary evidence on the record in the clerk's office, and thus patch up the award and sustain the jurisdiction of the commissioners. The rule I apprehend to be clear and well settled, that persons exercising a special and delegated authority must show upon the face of their proceedings that they have acted within their prescribed limits." This case, then, instead of sustaining the position here contended for, appears to be opposed to it; for if the appellate court could not sustain the award by receiving evidence *dehors* the record, nor order it placed on file in the clerk's office and so patch up the award, it is manifest the clerk would not be allowed to do so, as is claimed he may do here.

It may then be said with confidence, that these cases do not sanction the practice of allowing the clerk of a tribunal to certify from memory, without any minutes or record to guide him, as to what the proceedings of a tribunal may have been, and so make a record for the court of review; much less to make such a certificate upon information obtained from other persons; and if they do not support such practice, they have no pertinency to this case.

Nor does the language of the statute warrant it; but on the contrary, the only inference deducible from it is, that it was not

contemplated by the legislature.    Section 438 of the code of pro-
cedure, declares that, " the writ may be directed to the inferior
tribunal, board or officer, or to any other person having the custody
of the records or proceedings to be certified.    When directed to a
tribunal, the clerk, if there be one, shall return the writ, with the
transcript required."    Section 439 provides that, " the writ of
review shall command the party to whom it is directed to certify
fully to the court issuing the writ, at a specified time and place,
and annex to the writ a transcript of the record and proceedings,
(describing or referring to them with convenient certainty) that
the same may be reviewed by the court."    *    *    *    It will be
observed that the *transcript* of the record and proceedings is re-
quired to be returned—the clerk " shall return the writ with the
*transcript* required," is the language.    And again, in giving the
form of the writ in Section 439, it shall require the party to whom
it is issued to return the writ and " annex a transcript of the record
and proceedings."    Now the word " transcript " at once suggests
the idea of an original writing.    The word, not only in its popular
but legal sense, means a copy of something already reduced to writ-
ing.    Worcester defines it as " a writing made from or after an
original; a copy."    Burrill defines it as " a copy ; particularly of
a record."    Bouvier: " a copy of an original writing or deed."
Now, if anything beyond what is reduced to writing were intended
to be certified — the legislature would certainly have been more
definite—would not have stopped by simply requiring a *transcript*
of the record and proceedings to be returned.    The requirement to
return the " record and proceedings" is not by any means unusual,
even when nothing is sought but the record.    The form of the writ
of error, as generally employed is, that the record and proceedings
be returned to the court of review.    Still, it has never been claimed
that under this requirement to certify or return the proceedings,
anything but what is spread upon the records below could be *con-
sidered* by the appellate court.    It would certainly not be unfair
to presume that the words were used in the statute as they were
after used in legal proceedings prior to its adoption, as embracing
nothing more than such matters as are spread on the records, even

if there were nothing in the context of the statute itself to warrant such presumption.

However, so far as this case is concerned, it might very safely be admitted that the employment of the word proceedings, in this statute, was intended to authorize the court or officer to whom the writ is issued to certify facts not committed to writing, but held in remembrance until required to be returned, for there is no such certificate here.  Certainly, if a certificate of such fact could be received at all, it must be made upon the knowledge of the person making it, otherwise it would not be his certificate in its full intent and meaning.  A person who simply certifies to a fact, and in the same certificate states that it is done upon information derived from another, really only certifies to the information or knowledge of another.  He does not certify to the fact of his own knowledge. In this case, that there might be no mistake, the clerk makes the statement that the certificate is made upon affidavits presented to him for the purpose of enabling him to make it.  This cannot be a compliance with the statute, which requires the tribunal to whom the writ is issued, or its clerk, to certify the record and proceedings.

But it is argued, if this certificate is rejected, the demand of the assessor and the statement of the railroad company should also be disregarded, because not shown to have been used by the board, or to have been on file at the time of equalization ; and as a consequence, the board would be shown to have jurisdiction to equalize, as there would be no proof of a refusal to comply with any demand of the assessor.  However, it seems to us the clerk's certificate that "the demand, statement of A. N. Towne, statement of the assessor, and the protest of Thompson, are true and correct copies of original papers among the files of tax papers of Washoe County for the year 1870, now on file in my office," serves to show that they were on file at least.  It is true, he afterwards certifies that he was not present during the entire sitting of the board, and therefore does not know what papers were used.  Nevertheless, this certificate warrants the conclusion that the papers mentioned were filed, as they are certified to be copies of original papers among the files of the office.  It is not as definite in this respect as it should

be : still, the papers being taken from among the files, warrant the conclusion that they were themselves filed. If on file, they are of course a part of the records of the board, and must be presumed to have been before it.

By the papers thus returned, then, it appears a demand was made, and that it was not complied with by the railroad company; the case is thus brought directly within the statute, that no equalization shall be made when no statement is furnished, and also within the case of *The State* v. *The County Commissioners of Washoe County,* 5 Nev. 317.

Again, it is argued that the failure to furnish a statement within the time designated by the law does not deprive the board of jurisdiction, because it is claimed the statute only imposes the penalty where the person applying therefor has neglected to make a statement without *legal excuse.* This language of the statute is said to confer a discretion upon the board to determine whether there is a legal excuse or not; and, if it determine there is, although it may err in judgment, it is not ousted of jurisdiction. Counsel, we think, has entirely misapprehended the purport of the section of statute referred to. It reads thus: "If any corporation, company or person owning such railroad fail, neglect or refuse, after being notified, to furnish a statement for assessment and taxation, as provided in this act, the county assessor may proceed to make the assessment in the same manner as in other cases, as provided in the act to which this act is supplemental; and any person upon whom a demand is made for a statement, as in this act provided, failing, neglecting or refusing to furnish the statement as required, without legal excuse, shall be subject to the same punishment as in other cases of such failure, neglect or refusal, as provided in the act aforesaid." The punishment inflicted in cases of the neglect or refusal mentioned is imposed by Section 6 of the original Act of 1866; whilst the power of the board to equalize taxes is regulated by Section 15. The first imposes a punishment on the individual—the other simply prescribes the jurisdiction of the board of equalization, depriving it of the authority to equalize, when the person applying for that purpose has failed to comply with the demand for a statement. Nothing is clearer than that the legal excuse mentioned in the Act of 1869 is only to

State ex rel. Thompson *v.* Board of Equalization of Washoe County.

be considered in the criminal prosecution, and not before the board of equalization.   The punishment shall be inflicted where there is no legal  excuse for the  neglect or  refusal to comply with the demand of the assessor.   The prohibition upon the board to equalize the tax of a person in default is not spoken of in the original act as a punishment; it is simply declared that in such case there shall be no equalization.   The punishment imposed by Section 6 is one thing—the power and jurisdiction of the board is an entirely different thing.   Because the punishment is only to be inflicted where there is no legal  excuse for the neglect or failure of a person to make a statement, it by no means follows that the power of the board of equalization is thereby changed; that, notwithstanding Section 15 expressly prohibits an equalization of the tax of a person who has neglected or refused to comply with the demand, still, that they may, under this section of the supplemental act, claim the jurisdiction, whenever it may conclude there was a legal excuse. It is too manifest to admit of argument, that the legislature in the supplemental act simply intended to allow the showing of a legal excuse as a defense in cases of criminal prosecutions, and not to extend or interfere with the jurisdiction of the board of equalization. Section 15 of the Act of 1866, to which we must look for the jurisdiction of the board, gives it no discretion whatever, but imperatively declares that, where the person complaining of the assessment has refused to give the assessor his list, under oath as required, no reduction shall be made by the board of equalization in the assessment made by the assessor.

There being no discretion in the board in regard to this matter, and no showing of jurisdiction, the action of the board was unauthorized, and must therefore be annulled, and judgment entered accordingly.