Board of Sup'rs of Forrest County et al *v.* Melton
et al.

[86 South. 369, No. 21492.]

1. Certiorari.  *Purpose of petition for writ stated.*
     The petition for writ of *certiorari* is solely to enable the judge, to whom the application for the writ is made, to determine whether the writ should be granted, and is of no importance after the writ has been granted.

2. Certiorari.  *What constitutes record for trial of case removed to circuit court stated.*
     When a cause is removed to the circuit court by a writ of *certiorari*, the case to be tried by that court is made by the record removed to it from the inferior tribunal, and not by the allegations of the petition on which the writ is granted.

3. CERTIORARI. *Dismissed, where court is without jurisdiction.*

    If a case removed to the circuit court by writ of *certiorari* is one of which that court is without jurisdiction, it should be dismissed on motion.

4. CERTIORARI. *Procedure, on trial of case removed to circuit court stated.*

    In a case removed to the circuit court by a writ of *certiorari*, if no error of law appears from the record to have been committed on the trial of the case by the tribunal from which it was removed, the judgment of such tribunal must be affirmed. But if such an error does so appear, the judgment should be set aside, and the proper judgment entered, if apparent from the record, or the case may be tried anew on its merits.

5. CERTIORARI. *Procedure 'on new trial on merits of case removed to circuit court same as trial de novo.*

    If a case removed to the circuit court by a writ of *certiorari* is there tried anew on its merits, the procedure is the same as that in cases tried *de novo* in ordinary appeals to the circuit court.

6. CERTIORARI. *Under statute case may be removed from board of supervisors to circuit court on certiorari.*

    A case may be removed from a board of supervisors to the circuit court on a writ of *certiorari* under the provisions of section 91, Code 1906 (Hemingway's Code, section 73).

7. CERTIORARI. *Administrative orders of inferior tribunals cannot be removed to and re-examined by circuit court on certiorari.*

    Mere administrative orders of an inferior tribunal cannot be removed to and be re-examined by a circuit court on a writ of *certiorari*, but only such as are of a judicial, or *quasi*-judicial, nature.

8. CERTIORARI. *Order of another board may not be reviewed.*

    An order of another board or tribunal cannot be reviewed by the circuit court in a case removed to it from a board of supervisors, unless such order is the basis for a judgment rendered by the board of supervisors in a judicial proceeding.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

*Certiorari* by W. R. Melton and others to the board of supervisors of Forrest county and others, to review an order requiring cattle to be dipped. From the judgment both

parties appeal. Reversed, writ quashed, and case dismissed.

This is an appeal from a judgment rendered by the court below in a matter removed to it from the board of supervisors of Forrest county by a writ of *certiorari*.

The petition on which the writ was granted is quite lengthy, setting forth in great detail the history of the cattle tick eradication movement in Forrest county, from the election in 1914, in which Forrest county elected to come under the cattle tick eradication statutes, to the date of the filing of the petition, and alleging that by reason thereof such ticks had been eradicated from the county. The petition further alleges that, notwithstanding the freedom of the county from such ticks, the Mississippi live stock sanitary board, which board under the statutes has charge of the work of tick eradication—

"promulgated an order signed by its executive live stock inspector for the state of Mississippi . . . and sent same to each board of supervisors of twenty-three southern and southwestern counties in Mississippi, including the board of supervisors of Forrest county, which order is now on file in the office of the chancery clerk of said Forrest county, . . . reciting that the fact has been determined by the said live stock sanitary board that the Texas fever tick (*Margaropus annulatus*), which transmits the contagious and infectious disease known as tick fever, exists among cattle in parts of said counties, including a part of Forrest county, and that, acting under authority conferred by statute upon the Mississippi live stock sanitary board, and in compliance with the regulations of said board made and promulgated under authority of chapter 106, Laws of 1908, it is ordered and required that all cattle of the several quarantined areas in said counties, including the quarantined areas in said counties, and including the quarantined area in Forrest county, be dipped in arsenical solution every fourteen days until released from dipping by order of said board, and ordering and requiring that all cattle in the several counties not included within the quar-

antined areas of such counties, including Forrest county, be dipped in arsenical solution every twenty-eight days until four dippings have been done. Said order further requires that each board of supervisors of the counties named in this order, including Forrest county, procure the necessary chemicals to be used in the dipping of cattle for the eradication of ticks, and employ a sufficient number of assistants and helpers of the county inspector appointed by the Mississippi live stock sanitary board, as required by chapter 167, Laws of 1916; . . . that pursuant to the aforesaid order of said live stock sanitary board the board of supervisors has employed assistants and helpers to the defendant, Lewis W. Batson, county inspector, and had purchased, or will continue to purchase, quantities of chemicals and materials for the purpose of carrying out said order, all at great expense to the county and to petitioners; that said county inspector or assistants have given notice to petitioners and others in his community to dip their cattle every twenty-eight days for four times, pursuant to the order of said Mississippi live stock sanitary board."

The petition further alleges that there are no cattle ticks now in Forrest county and the community in which petitioners live, and that consequently the live stock sanitary board and the board of supervisors of Forrest county are without power to require the dipping of the petitioners' cattle; that the process of dipping is attended with great danger of injury, damage and death to cattle; that the vats in which they are dipped are filled and charged with a strong arsenical solution, which very frequently blisters and burns the cattle, causing their hide and skin to peel and fall off, causing them to lose in weight, and which very often kills them; that the work of dipping also causes great inconvenience, expense, and loss of time to petitioners; that the Mississippi live stock sanitary board and the board of supervisors are inferior tribunals under the law, and that their actions are subject to review by the higher courts by means of a writ of *certiorari.*

The prayer of the petition is: ·"That the court grant a writ of *certiorari* with *supersedeas,* directed to the board of supervisors of Forrest county, in whose custody the aforesaid order of the Mississippi live stock sanitary board now is, requiring said board of supervisors to bring up and certify to this court the original of said order, together with all orders of said board of supervisors, if any, passed by it since January 1, 1920, or since the date of said order of the Mississippi live stock sanitary board dated April 1, 1920, and all other orders, if any, passed by it since January 1, 1920, or since the date of said order of the Mississippi live stock sanitary board dated April 1, 1920, and all other orders, if any, of said Mississippi live stock sanitary board in its possession relating to tick eradication, the employment of inspectors and assistants, and the purchase of chemicals or materials filed with said board of supervisors since January 1, 1920, or that the said board of supervisors make, certify, and file a transcript of all such orders; that said return be made on or before the next term of this court, commencing the first Monday of November, 1920, to be held at the courthouse of said county in the city of Hattiesburg; that the said writ of *certiorari* issued with *supersedeas* suspending the operation of the order of said Mississippi live stock sanitary board and other orders, if any, together with orders, if any, of the board of supervisors of Forrest county, relating to tick eradication, passed since January 1, 1920, and since April 1, 1920; that said board of supervisors, the Mississippi live stock sanitary board, and the inspector for this county, the said Lewis W. Batson, be summoned to answer this petition in the manner required by law, said summons to be returnable to the next regular term of this court, commencing the first Monday of November, 1920; that on a hearing of said writ the said order of the Mississippi live stock sanitary board be declared illegal and void, set aside and quashed, and that all orders of the board of supervisors undertaking to comply with said order of the Miss-

issippi live stock sanitary board be vacated, set aside, and quashed.''

The Lewis W. Batson referred to is alleged in the body of the petition to be the inspector of the Mississippi live stock sanitary board for Forrest county.

The petition was presented to the circuit judge in vacation, who indorsed thereon an order, directing the writ of certiorari and the other process therein prayed for to be issued; the writ to operate as a *supersedeas* upon the petitioners entering into bond in the sum of two hundred dollars, payable and conditioned according to law.

At the term of the court to which the writ was returnable a motion to quash the writ was made by the Mississippi live stock sanitary board, but was overruled. The Mississippi live stock sanitary board, the board of supervisors, and Batson then filed a joint answer to the petition, admitting some, and denying other of its allegations, among the latter being that cattle ticks have been eradicated from Forrest county. The board of supervisors, in compliance with the writ of certiorari, filed a copy of the order received by it from the Mississippi live stock sanitary board, directing the dipping of cattle in Forrest county, and also certified copies of the following orders passed by it, as they appear upon its minutes:

"It is ordered by the board that the salary of supervisors of dipping to be later employed by this board be and the same is hereby now fixed at the sum of two dollars and fifty cents per day, and that the clerk of this board receive and file all applications for said position on or before noon of the 1st day of March, 1920.

"It appearing to the board from the several bids for chemicals for dipping vats submitted to this board that William Cooper & Nephews offer the best and cheapest chemicals, and the board having inspected the various offers of other concerns, do hereby accept the bid of the said William Cooper & Nephews as submitted, and hereby request the said William Cooper & Nephews to furnish all that is needed during the present year.

"Ordered that the following named parties be and they are hereby employed to assist in the prosecution of dipping in Forrest county and to be so employed at and about the duties hereinafter designated to them respectively.  D. A. McDonald at two dollars and fifty cents per day for each day actively working at inspecting cattle in the city of Hattiesburg.  L. W. Batson be and he is employed to care for all dipping outside of the city of Hattiesburg in beats 2, 3, and 4, at the sum of four dollars per day for actual number of days working, and N. W. Lee be employed in beat 5 and at the price of four dollars per day for all days actually working.  All of said employees to be under the supervision of the county inspector and this board."

The order of the Mississippi live stock sanitary board, directing the dipping of cattle in Forrest county, is as follows:

"Live Stock Sanitary Board of Mississippi.

"Jackson, Mississippi, April 1, 1920.

"To the Honorable Board of Supervisors and Cattle Owners of the Following Named Counties: Amite, Clarke, Forrest, Franklin, George, Greene, Hancock, Harrison, Jackson, Jasper, Jones, Lamar, Lawrence, Lincoln, Marion, Pearl River, Perry, Pike, Smith, Stone, Walthall Wayne, and Wilkinson.

"The fact has been determined by the Mississippi live stock sanitary board, and notice is hereby given that the Texas fever tick (*Margaropus annulatus*) which transmits the contagious and infectious disease known as splenitis, or tick fever, exists among cattle in parts of the following counties:  Amite, Clarke, Forrest, Franklin, George, Greene, Hancock, Harrison, Jackson, Jasper, Jones, Lamar, Lawrence, Lincoln, Marion, Pearl River, Perry, Pike, Smith, Stone, Walthall, Wayne, and Wilkinson.  Therefore, acting under authority conferred by statute upon the Mississippi live stock sanitary board, and in compliance with the regulations of the Mississippi live stock sanitary board made and promulgated under authority of chapter 106, Laws of 1908, it is hereby ordered and required that

all cattle of the several quarantined areas of the above-named counties be dipped in arsenical solution every fourteen days until released from dipping by order of this board.

"It is further ordered and required that all cattle in the above-named counties not included within the quarantined areas of such counties above referred to be dipped in arsenical solution every twenty-eight days until four dippings have been done.

"It is further ordered and required that each board of supervisors of the counties named in this order procure the necessary chemicals to be used in the dipping of cattle for the eradication of ticks and employ sufficient assistants. and helpers of the county inspectors appointed by the Mississippi live stock sanitary board as required by chapter 167, Laws of 1916. (Signed) Mississippi Live Stock Sanitary Board, by Hudson Chadwick, Executive Live Stock Inspector.

"Note.—The twenty-eight day dipping required in this order is for the purpose of determining if the tick has been eradicated in the areas other than those quarantined."

When the matter came on for final disposition, the court below, before entering any order or judgment therein, proceeded to hear oral testimony touching the presence *vel non* of cattle ticks in Forrest county and the community in which the petitioners live, and placing on the appellants, over their objecton, the burden of proving the presence of such ticks in the county and community. From a judgment granting the major part of the prayer of the petition there is both a direct and a cross-appeal.

*F. H. Lotterhos,* Assistant Attorney-general, for appellants. .

*Davis & Hill,* for appellees.

SMITH, C. J., delivered the opinion of the court.

(After stating the facts as above). The issuance of a writ of *certiorari* for the removal to the circuit court of

cases decided by an inferior tribunal is governed by sections 90 and 91, Code of 1906 (Hemingway's Code, sections 72, 73). The very simple procedure contemplated by these statutes was not followed in the removal of this case to and in the trial thereof by the court below.

The petition on which the writ of *certiorari* is to be granted need only set forth the case sought to be removed to the circuit court, and the cause for the removal, so that the judge to whom the application for the writ is made may be able to determine therefrom whether or not the writ should be granted; the sufficiency of the allegations of the petition being for his determination alone. After the writ has been granted the petition ordinarily ceases to be of any further importance, for the case to be tried by the circuit court is not made by the allegations of the petition, but by the record brought to it from the inferior tribunal by the writ. *Loomis* v. *Bank,* 4 How. 660. When the record made in the inferior tribunal has been filed in the circuit court, if the case made thereby is one of which the court has jurisdiction, it should proceed with the trial thereof, but, if it is not, it may be dismissed on motion. If no error of law appears from the record to have been committed on the trial of the case by the tribunal from which it was removed, its judgment must be affirmed. But if such an error does so appear the judgment should be set aside, and the proper judgment entered if apparent from the record, or the case may be tried anew on its merits, in which event the procedure on the trial is the same as that in cases tried de novo in ordinary appeals to the circuit court.

Since boards of supervisors are invested with judicial power, they are necessarily tribunals of the character referred to in section 91, Code of 1906 (Hemingway's Code, section 73). *Railroad Co.* v. *Adams,* 85 Miss. 772, 38 So. 348. But it is not every act of an inferior tribunal that can be removed to and re-examined by a circuit court on a writ of *certiorari,* but only such as are of a judicial or a *quasi*-judicial nature. *Railroad* v. *Adams, supra;* 11 C.

J. 120; 5 R. C. L. 258. The orders of the board of supervisors which the appellees here seek to have reviewed by the circuit court were not made in a judicial proceeding, but are mere administrative orders, in no way akin to "judgments" in "cases decided," for the review of which only the statute authorizes the issuance of a writ of *certiorari*; consequently the motion to quash the writ should have been sustained.

Counsel for the appellees frankly concede that the order which they really seek to have reviewed and annulled or modified is the order of the Mississippi live stock sanitary board, but that order cannot be here considered, unless it is the basis for a judgment rendered by the board of supervisors in a judicial proceeding.

The judgment of the court will be reversed the writ quashed, and the case dismissed.

*Reversed and dismissed.*