574 So.2d 586 (1990)
Jesse Ty GILL
v.
MISSISSIPPI DEPARTMENT OF WILDLIFE CONSERVATION.
No. 07-CC-59222.
Supreme Court of Mississippi.
December 12, 1990.
Rehearing Denied January 16, 1991.
*588 Albert Necaise, Gulfport, for appellant.
Mike C. Moore, Atty. Gen., Richard D. Mitchell, Douglas Drew Malone, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court:

I.
This case presents important questions regarding the nature and extent of influence our elected political officials may lawfully have and exercise over who should hold certain state jobs below the policy-making level. These questions arise through the process legislatively committed Employee Appeals Board and we are charged to vindicate the integrity of that Board's findings, interpretations, and redress of an employee's grievances against unlawful political interference.

II.
For many years Jesse Ty Gill, 32, had on file with the Department of Wildlife Conservation (DWC) an application for the position of conservation officer (formerly "game warden") in Harrison County. In the Spring of 1986 such a position came open, and DWC considered Gill, along with many others. Nineteen of twenty-one hunting clubs in the Harrison County area backed Gill for the job. A DWC administrative personnel team interviewed Gill, and DWC's Internal Affairs Office conducted a background investigation. On March 18, 1986, DWC hired Gill for the position of Conservation Officer I, Harrison County. Gill resigned his private employment and enrolled in Basic Law Enforcement Training class at Laurel, Mississippi. He completed this training at the end of May 1986, finishing seventh in his class.
On the day of graduation, May 30, 1986, T.J. Jennings, Chief Investigator, came to the training academy to congratulate the DWC graduates and told Gill, "They need to talk to you in Jackson. They called me on the radio when I was coming down here and told me that you needed to be up there before closing time."
Gill drove immediately to DWC Headquarters, where he was met by Jack Herring, Bureau Director of Fish and Wildlife, Dan Tullos, Assistant Chief of Law Enforcement, and Lynette Conklin. Tullos informed Gill that his employment was not in the best interest of the department and that he might resign if he so wished. Gill declined to resign and was told he was terminated. When he asked why, Herring, Tullos, and Conklin each refused any explanation. Gill was told to take his truck and park it. On June 3, 1986, Gill received a letter from the DWC, reciting that he had been advised DWC had terminated his employment and that he should collect pay only through June 13, 1986. DWC's official reason for terminating Gill was that he had practiced deception in his employment application by failing to disclose prior misdemeanor offenses against the state's wildlife conservation laws.
Gill appealed his termination to the Mississippi Employee Appeals Board (EAB), alleging the grounds given were but a pretext and that DWC had in fact acted solely for partisan and political reasons. EAB's Chief Hearing Officer William H. Smith, III, afforded Gill a full hearing. See Miss. *589 Code Ann. § 25-9-131(1) (Supp. 1990). It then came to light that two members of the Mississippi House of Representatives elected from Harrison County and, as well, at least one other politically potent local elected official, had, upon hearing that DWC had hired Gill, objected strongly and sought his termination. These political officials appear in part to have been motivated by support for Andy Patton, a state employee who had been a disappointed applicant for the same job. They pressed their complaints before top executive officers within DWC, members of the gubernatorially appointed Commission of Wildlife Conservation, and even the Governor himself.
The purported basis for these officials' complaints against Gill was that he had a record of arrests and convictions for illegal game offenses.[1] With one minor exception, each of these offenses occurred more than ten years earlier, when he was a teenager, and Gill's explanation was that he had tried to tell the DWC personnel interviewers about them and had been told the department was interested only in offenses within the past five years. Gill's only such offense was on January 15, 1986, when he had been given a ticket and fined for not wearing hunter's orange. DWC's Chief Law Enforcement Officer said DWC had no consistent policy of refusing to hire as conservation officers persons who had been convicted on game offenses and that he himself had such a conviction in years past.
No useful purpose could be served by recitation of all that occurred leading to Gill's termination. The record is replete, and is convincing, that several elected political officials who held no lawful authority over DWC personnel displayed a substantial interest in securing Gill's termination. Numerous telephone and personal conferences were held between and among these elected officials, persons in the Governor's office, DWC Commissioners, and top executive officials. The evidence may fairly be read that, in the minds of those who first brought the complaints against Gill, his more than ten years old game offenses were but a ruse, as was his failure to disclose these on his written DWC employment application.[2]
On November 12, 1986, Hearing Officer Smith rendered his decision and, after reciting a summary of the evidence, said the question before him was "whether Jesse Ty Gill would have been terminated had the political contacts not occurred." Hearing Officer Smith then answered the question
Although I do not find that the political contacts specifically and emphatically ordered that Jesse Ty Gill be terminated, I do find that he would not have been terminated if the numerous contacts had not occurred. I do, therefore, feel that the termination of Jesse Ty Gill was the result of influence exerted by persons in political positions of responsibility.
Smith then ordered Gill reinstated with full back pay and other benefits.
DWC appealed to the full Employees' Appeal Board which extensively reviewed the matter and, in the end, affirmed. EAB regarded the objective grounds DWC asserted  the old game violations and Gill's failure to disclose them  a pretext and stated
It is obvious to anyone that Jesse Ty Gill was fired for partisan political and personal reasons and that he was not treated with the fairness, justice and respect as is demanded by the laws of the State *590 of Mississippi... . There can be but one conclusion... . The inescapable conclusion is that Jesse Ty Gill was fired from employment with the State Department of Wildlife Conservation for partisan and political reasons, which reasons are prohibited by the rules of the state Personnel Board under the laws of the State of Mississippi.
DWC then sought review in the Circuit Court of Hinds County which considered the matter via writ of certiorari. The Circuit Court did not question any of the EAB's findings of evidentiary or ultimate fact but looked only to errors on the face of the record and proceedings below and reversed on grounds that EAB had read the law too broadly. The Court held Gill protected only in his political opinions and affiliations and that the "political interference" so effective and so replete within the record did not render Gill's discharge legally illicit. In the end, the Court said EAB had impermissibly expanded the statutory definition of political discrimination to include "political interference" and had thus exceeded the authority the legislature had granted it.
Gill now appeals to this Court.

III.
Preliminarily, we first consider two questions of jurisdiction and procedure. The first is whether the Circuit Court had the authority to hear DWC's appeal of the EAB's final decision. The statute, Miss. Code Ann. § 25-9-132 (Supp. 1990) provides that any employee may appeal but is silent on the point of the rights of the state department or agency. See Hood v. Mississippi Department of Wildlife Conservation, 571 So.2d 263, 267 (Miss. 1990); Mississippi Forestry Commission v. Piazza, 513 So.2d 1242, 1247 (Miss. 1987); Mississippi State Personnel Board v. Armstrong, 454 So.2d 912, 914 n. 3 (Miss. 1984).
This Court has repeatedly held that a party has no right of appeal, except insofar as it has been given by law. Fleming v. State, 553 So.2d 505, 506 (Miss. 1989); State Ex Rel. Patterson v. Autry, 236 Miss. 316, 110 So.2d 377, 378 (1959); but see, Southern Farm Bureau Casualty Ins. Co. v. Holland, 469 So.2d 55, 63 (Miss. 1984) (Anderson, J., concurring). No law conferred upon the Department of Wildlife Conservation any right of appeal of an adverse EAB decision, a circumstance not dissimilar from that we find in numerous other states. See, e.g., State Ex Rel Hood v. Washington State Personnel Board, 82 Wash.2d 396, 511 P.2d 52 (1973); Washington State Liquor Controlboard v. Washington State Personnel Board, 88 Wash.2d 368, 561 P.2d 195 (1977); Samuel Mahelona Memorial Hospital v. County of Kauai Civil Service Commission, 46 Haw. 260, 377 P.2d 703 (1962).
On the other hand, limited judicial review via writ of certiorari is available to DWC. Miss. Code Ann. § 11-51-93 (1972) empowers the circuit courts to make certiorari review of proceedings before a justice court and that in such cases
[T]he court shall be confined to the examination of questions of law arising or appearing on the face of the record and proceedings... .
Miss. Code Ann. § 11-51-95 (Supp. 1988), as amended in 1984, provides
Like proceedings as provided in section 11-51-93 may be had to review the judgments of all tribunals inferior to the circuit court, whether an appeal be provided by law from the judgment sought to be reviewed or not. However, petitions for a writ of certiorari to the circuit court for review of a decision of a municipal civil service commission created under section 21-31-1 et seq. or section 21-31-51 et seq. shall be filed within thirty (30) days after the entry of the judgment or order of the commission. (Emphasis added)
See Mississippi State Personnel Board v. Armstrong, 454 So.2d 912, 914-15 (Miss. 1984) (interpreting pre-1984 version of certiorari statutes).
The Employee Appeals Board is a "tribunal inferior" within the statute. The 1984 amendment respecting municipal civil service commissions restricts the time within *591 which the writ must be sought to such commissions and by inference accepts that a municipal civil service commission is a "tribunal inferior." If a municipal civil service commission is a tribunal inferior, it follows on principle that the Employee Appeals Board is as well. Banks v. City of Greenwood, 404 So.2d 1038 (Miss. 1981) and City of Jackson v. Little, 245 So.2d 204 (Miss. 1971) were decided prior to the 1984 amendment to Section 11-51-95 and are of little value. The Circuit Court was correct when it held
That, as in Merritt v. State, 497 So.2d 811 (Miss. 1986), the writ of certiorari is alive and well as a vehicle to review the decisions of the Mississippi State Personnel Board where no other mode of appeal is provided or available, within the limitations inherent in the writ.[[3]]
Those limitations, as stated in Section 11-51-93, are that the Court shall be confined to the examination of "questions of law arising or appearing on the face of the record and proceedings." At first blush this would seem to pretermit any review of the facts and even our normal inquiry whether there may be substantial evidence to support the decision of the Employee Appeals Board. On the other hand, should the record and proceedings below[4] reflect a decision wholly unsupported by any credible evidence, we would regard that decision as contrary to law and, as a matter appearing on the face of the record or proceedings, subject to modification or reversal. We thus are in our familiar posture of judicial review of administrative processes wherein we may interfere only where the board or agency's decision is arbitrary and capricious, accepting in principle the notion that a decision unsupported by any evidence is by definition arbitrary and capricious. See Miss. Code Ann. § 25-9-132(2) (Supp. 1990); Hood v. Mississippi Department of Wildlife Conservation, supra; Mississippi Forestry Commission v. Piazza, 513 So.2d 1242, 1246 (Miss. 1987); Eidt v. City of Natchez, 421 So.2d 1225, 1231-32 (Miss. 1982); but see Hamilton v. Long, 181 Miss. 627, 180 So. 615, 619 (1938).

IV.
Another preliminary issue is whether Gill, as a probationary employee, enjoyed rights in his employment such that he could complain of his dismissal. DWC hired Gill on March 18, 1986, and he began work on April 1, 1986. He was terminated effective June 13, 1986, well before he completed his required year of probationary service. The Circuit Court in its opinion stated,
[n]owhere does Section 25-9-127 mention the EAB or purport to deny probationary employees the right of appeal to the EAB. It simply denies probationary employees the protection of the requirement of good cause or inefficiency for adverse action.
The Circuit Court was correct. A probationary employee such as Gill enjoys no protection via the "inefficiency or other good cause" standard. Miss. Code Ann. § 25-9-127(b) (1990); contrast Hood v. Mississippi Department of Wildlife Conservation, supra. He may not, however, be "adversely affected" for other unlawful reasons.
State law directs that the State Personnel Board (SPB) administer a state personnel system and in so doing advance several broad policies. These include:
(e) To assure fair treatment of ... employees in all aspects of personnel administration *592 without regard to political affiliation, ... .
(f) To assure that employees are free from coercion for partisan or political purposes... .
Miss. Code Ann. § 25-9-103 (Supp. 1990). The statute then addresses officials who might be tempted to flex their political muscles.
No elected state official, elected state district official, appointed state official ... shall use his official authority or influence to coerce, by threat of discharge from employment or otherwise, the political action of a person or body.
Miss. Code Ann. § 25-9-145(1) (Supp. 1990). The statutes standing alone confer upon state employees no express right to be secure in their employment from political interference. The legal existence of the legislative language just quoted makes no sense, however, absent such rights.
Regarding appeals, the legislature first empowered SPB to create the Employee Appeals Board, Miss. Code Ann. §§ 25-9-115(e) and -129 (Supp. 1990), and then provided in Miss. Code Ann. § 25-9-131 (Supp. 1990), that:
Any employee in the state service[5] may appeal his dismissal or other action adversely affecting his employment status to the employee appeals board created herein. The proceedings before the employee appeals board shall be de novo, and the employee shall be afforded all applicable safeguards of procedural due process.
See Mississippi Forestry Commission v. Piazza, 513 So.2d 1242, 1246-47 (Miss. 1987).
The legislature then vested in SPB the authority to promulgate rules and regulations to interpret and enforce these statutory imperatives. Miss. Code Ann. § 25-9-115(c) (Supp. 1990). The SPB has exercised this authority and has provided that one such as Gill may appeal to EAB. The rule conferring this right has been articulated in SPB's Manual of Policies, Rules and Regulations of the Mississippi State Personnel Board, wherein it has provided at § 5.40.2(a):
Any ... probationary state service employee ... may appeal alleged acts of discrimination based on... creed, political opinions or affiliations, ... in any personnel action.
In April, 1986, SPB published Employee Appeals Board Administrative Rules, which elaborated upon Section 5.40.2(a):
APPEALS
Any ... probationary state service employee ... who has reason to believe that he or she has been discriminated against because of ... creed, political opinions or affiliations, ... in any personnel action may appeal such action to the Employee Appeals Board... .
2.(a) Any ... probationary state service employee .. . may appeal alleged acts of discrimination based on ... political opinions or affiliations ... in any personnel action.
These regulations enjoy legal validity via SPB's appropriate exercise of its statutory authority. They proceed upon the premise employees enjoy the rights they may appeal. Gill invoked these processes such that he may of right have been heard by EAB or its hearing officer when he asserted a colorable claim. Here, as elsewhere, whether EAB may go forward turns on a fair reading of the employee's claims which must be taken as true. Cf. Hood v. Mississippi Department of Wildlife Conservation, 571 So.2d 263, 267 (Miss. 1990); American Fidelity Fire Insurance Co. v. Athens Stove Works, Inc., 481 So.2d 292, 296 (Miss. 1985); Stanton & Associates, Inc. v. Bryant Construction Co., 464 So.2d 499, 505-06 (Miss. 1985).
By reason of the foregoing, we hold that Gill, although a probationary employee, had the right to fair treatment without regard to creed, political opinion or affiliation and to be secure in his employment *593 from partisan or political interference. As he felt these rights had been abridged, Gill enjoyed a procedural right to appeal to the EAB the DWC action terminating his employment, insofar as that action may have been based upon political opinions, affiliations or interference. In sum, the EAB had full authority to hear and adjudge Gill's appeal.

V.
The EAB credited Gill's claim, and our question on the merits becomes whether there may have been any error of law infecting the EAB proceedings. Recall that state law protects all state employees from discrimination in the terms and conditions of employment by reason of "political affiliation." Miss. Code Ann. § 25-9-103(e) (Supp. 1990). State employees of right "are free from coercion for partisan or political purposes." Miss. Code Ann. § 25-9-103(f) (Supp. 1990). SPB's regulations flesh out these rights. The Circuit Court found the facts of Gill's case to reflect action by political officials which it regarded as outside the scope of these protections, and our question is whether the Court was correct in this regard.
There is an institutional setting. We have today a matter of statutory interpretation, committed initially to an agency within the executive department of the government, here the State Personnel Board and its alter ego, the Employees Appeal Board. Notwithstanding our ordinarily de novo review of questions of law, we have accepted an obligation of deference to agency interpretation and practice in areas of administration by law committed to their responsibility. See, e.g., Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc. d/b/a Riverside Hospital, 528 So.2d 804, 808 (Miss. 1988); General Motors Corp. v. Mississippi State Tax Commission, 510 So.2d 498, 502 (Miss. 1987); Mississippi Employment Security Commission v. Philadelphia M.S.S.D., 437 So.2d 388, 394 n. 6 and 398 n. 13 (Miss. 1983); Gully v. Jackson International Co., 165 Miss. 103, 145 So. 905, 907 (1933); see also, Red Lion Broadcasting Co. v. Federal Communications Commission, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 1801-02, 23 L.Ed.2d 371, 383-84 (1969); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965); Williams v. St. Clair, 610 F.2d 1244, 1248-49 (5th Cir.1980). This duty of deference derives from our realization that the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the problems committed to its care which no court can hope to replicate. See NLRB v. Hearst Publications, 322 U.S. 111, 130, 64 S.Ct. 851, 860, 88 L.Ed. 1170, 1184 (1944). In today's context, that duty of deference is as well a function of EAB's unique administrative charge to blend and pursue pragmatically and at once fact finding, legal interpretation and promotion of legislatively established public policy. Of course, all of this is subject to judicial review, for whatever the precise content of our duty of deference, it has no material force where agency action is contrary to the statutory language, as the Circuit Court correctly perceived. See, e.g., Mississippi State Tax Commission v. Moselle Fuel Company, 568 So.2d 720, 723 (Miss. 1990); Mississippi State Tax Commission v. Dyer Investment Co., Inc., 507 So.2d 1287, 1289 (Miss. 1987); Universal Manufacturing Corp. v. Brady, 320 So.2d 784, 786 (Miss. 1975). The question is whether EAB has in fact exceeded its authority.
As we understand it, the Circuit Court's opinion holds that state law protects a state employee only from "pressure exerted solely because of some opinion expressed by or affiliation of the affected employee." It certainly does this much. A state employee would be protected if he were fired by reason of his membership in a political party, or if he were fired for expressing the opinion that this or that official should be defeated at the polls, or even for expressing an opinion that the state ought enact laws differing from those which presently exist, Claiborne County Board of Education v. Martin, 500 So.2d 981, 985-86 (Miss. 1986), provided only that civil service employees expecting protection from political *594 interference must themselves refrain from such. See Mississippi Forestry Commission v. Piazza, 513 So.2d at 1250. Still, to limit the statutory phrase "political affiliations" or the regulatory phrase "political opinions or affiliations" as the Circuit Court did substantially slights their semantic sense and the common experience and understandings of our people. If a state employee is protected from "pressure exerted ... because of ... [his political] affiliation," it follows on principle that he is protected from "pressure" emanating from his opponent's political affiliations. It follows as well that he is protected because of his lack of political affiliations, because of his political impotency, if you will. Moreover, the Circuit Court ignores Section 25-9-103(f) which charges the SPB/EAB to "assure that employees are free from coercion for partisan or political purposes," not to mention Section 25-9-145(1)'s addition to our law of crimes. Being fired for lack of powerful political friends would seem the ultimate in coercion for partisan or political purposes, not to mention the chilling effect such a firing may have upon other state employees.
The idea implicit in our state civil service statutes is below the policy-making levels, the public needs and is entitled to the service of a competent professional core of state employees with reasonable job security amidst the shifting of the political winds. "One purpose of the act was to get state employees out of internecine politics." Mississippi Forestry Commission v. Piazza, 513 So.2d at 1250. Below the policy-making level, a state employee's job should not turn on whether he has the right political friends, or, as in this case, a combination of no political friends and the wrong political enemies. Concomitantly, policy-making state administrators must be granted substantial immunity from political interference in who they hire and fire. The legislature has passed no law giving its members any such power of appointment, nor could it consistent with the constitution. Alexander v. State by and through Allain, 441 So.2d 1329, 1343-45 (Miss. 1983).
Over the years the position of game warden, as our people still know it, has been much coveted. Historically, these jobs have been thought subject to political influence and control. The clarion call of our civil service statutes is that such control should end and that we should be most vigilant that it end in those areas where historically it has been most abused.
Political opinion and affiliation must necessarily include their negatives. The law protects a politically inactive and unconnected employee the same as one who has positive political opinions and affiliations. The law as well protects a state employee who, in the words of one of the legislators who testified, "was in the wrong place at the wrong time and got caught in a cross-fire" between between legislators and top DWC officials. Mississippi Forestry Commission v. Piazza, 513 So.2d at 1250. Accepting the facts as EAB has found them, Jesse Ty Gill lost his job because he lacked politically powerful affiliations. Accepting the law as EAB has interpreted it, Gill of right was protected from such interference.
Nothing said here questions the prerogative or indeed the duty of elected public officials to take an interest in those who serve the state and to provide information to the proper authorities regarding the qualifications, competence and integrity of state employees. Cf. Mississippi Forestry Commission v. Piazza, 513 So.2d at 1250; Sierra Club v. Costle, 657 F.2d 298, 401, 408, 409 (D.C. Cir.1981). Elected public officials may and often should press their views firmly but wholly without threat or innuendo of possible reprisals. There is a difference between expressing an interest, providing information, and even arguing competence on the one hand, and trying to use political clout to override an administrative personnel decision, on the other.[6] Our state's administrative heads and regulators are professionals and should be *595 treated as such. The fundamental ground rule all elected officials must regard is that within the authority our law has vested in the posts they hold, the administrators have the final say. The law  enacted by the legislature and approved by the governor  vests in the Employee Appeals Board and not the judiciary  the authority and responsibility
To distinguish between legitimate inquiry in keeping with the responsibilities and duties of those elected to office and pressure exerted solely because of some opinion expressed by or affiliation of the affected employee, ... .
to use the Circuit Court's own words, and that Court erred when it held otherwise.
The evidence in the record before us substantially supports the EAB findings that DWC discharged Gill for proscribed political reasons. Both legislative and institutional imperative limit our review of such findings, Miss. Code Ann. §§ 11-51-93, and -95, and 25-9-132(2) (1972 and Supp. 1990); see, e.g., Mississippi Employment Security Commission v. McGlothin, 556 So.2d 324, 329-30, 333 (Miss. 1990); Morris v. Landsdell's Frame Co., 547 So.2d 782, 784-85 (Miss. 1989); Mississippi Employment Security Commission v. Pulphus, 538 So.2d 770, 772 (Miss. 1989); not to mention the public's legitimate interest in administrative efficiency. Mississippi Forestry Commission v. Piazza, 513 So.2d at 1250. No fair minded person reviewing this record could say these findings not supported by any substantial evidence, nor that EAB's decision was arbitrary or capricious.
Beyond that, we stay our hand in the face of SPB's regulatory interpretations of the state civil service statutes proscribing political interference and, as well, EAB's interpretation of both the statutes and SPB's rules in the context of today's case. By a reasonable reading of Sections 25-9-103(e) and (f), plus Section 25-9-145(1), in the setting of Section 25-9-115(c)'s grant of rule-making power, SPB held the power to interpret state employees' right to be secure from the sort of political interference practiced here. SPB has in fact promulgated rules accepting and interpreting these rights. EAB was within its authority when, after finding the facts as it did, it held the law to protect Gill and afford him a remedy. In sum, no error appears on the face of the record or proceedings below.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER and BLASS, JJ., concur.
ANDERSON, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
PITTMAN, J., not participating.
ANDERSON, Justice, dissenting:
I must respectfully dissent from the majority's holding today. It states that it is for the Employee Appeals Board (EAB) and not the judiciary,
to distinguish between legitimate inquiry in keeping with the responsibilities and duties of those elected to office and pressure exerted solely because of some opinion expressed by or affiliation of the affected employee... .
quoting from the circuit court opinion. It neglects to point out that this is precisely what the circuit court held that the Employee Appeals Board failed to do. In finding that Gill, a probationary employee, dischargeable for any reason except for reason of race, creed, color or political opinion or affiliation, was discharged because of "political interference" the EAB required neither allegation nor proof that Gill was discriminated against for a political opinion or affiliation or lack thereof.
I agree with the majority that a prohibition against discharge for political affiliation necessarily precludes an adverse job action because the employee lacks political connections or because some other person seeking the job has more political connections. The plain fact is, however, that the relative political connections between the parties were never alleged or proved.
Gill's political connections, or lack thereof, are not reflected in the record. An *596 obvious reason is that they were never made an issue by his petition for appeal to the EAB, despite the fact that such an allegation appears necessary to give the EAB jurisdiction to hear an appeal by a probationary employee. Rule 5.40.2(a), Manual of Policies, Rules and Regulations of the Mississippi State Personnel Board. It is this failure, even in the face of an order of the EAB for a more definite statement, that led the circuit court to conclude that the EAB lacked jurisdiction under its own rules and its governing legislation.
In order to evade this problem, the majority opines that the elected officials who urged Gill's dismissal "appear in part to have been motivated by support for Andy Patton, a state employee who had been a disappointed applicant for the same job." This is not a finding of the EAB and nothing in the record supports this statement. Indeed, Andy Patton probably served as a catalyst for what followed by bringing certain facts to the attention of elected officials but there is no evidence to suggest that he was in anyway affiliated with any official. Nor was there evidence that his candidacy was supported by any official. It is hardly unusual that a disappointed candidate becomes the "whistle blower." The fact that reports from such a person revealed information concerning the propriety of Gill's selection does not, without more, lend itself to the conclusion that elected officials were motivated by support for the candidate.
The EAB concluded that the reason given for Gill's termination was pretextual. I am aware that in some instances a finding that the proffered reason is pretextual gives rise to an inference that some unspoken and unlawful reason motivates the action. In my view, however, the person claiming that the unspoken reason is unlawful must make some facial showing that he is a member of a class of persons sought to be protected by the statutory scheme declaring only certain reasons to be unlawful. Where, as here, the EAB requires neither allegation nor proof it has gone beyond its statutory grant of power with respect to probationary employees.
I am, of course, sensitive to the concerns of the majority that "internecine politics" be replaced by merit in the selection of state employees. I also know, however, that legitimate citizen concerns about the operation of government are often expressed by the legislative holders of their proxy at the state and federal levels. Indeed our congressmen have a number of staff people who do little but run interference between constituents and the government bureaucracy. Our legislature, not similarly blessed, must do it personally. To the extent that the EAB is allowed to read a protection against punishment for political views or affiliation as an insulation against facially valid concerns over qualifications because they are expressed by elected officials, it exceeds its authority.
Here legitimate questions are raised over whether the fox should be hired to guard the hen house. Although Gill's convictions were misdemeanors and dated, they were nevertheless serious within the context of the job that he was hired to perform. The fact that the Department of Wildlife Conservation has no consistent policy with regard to employing persons with game violations is more of an indictment of the department than a reason to order it to continue such a practice under the guise of insulating it from political interference. I would affirm.
DAN M. LEE, P.J., and SULLIVAN, J., join in this dissent.
NOTES
[1] The record reveals that Gill had been arrested for killing an illegal deer in January, 1972, and fined $51.50; arrested for headlighting a deer on September 16, 1975, and fined $250.00; given a ticket and fined for not having on hunter's orange January 15, 1986; it is disputed as to whether Gill was arrested for trespass May 23, 1982, since he contends the judge threw the case out after questioning the man who brought the charges; a charge of possession of an illegally taken deer during closed season on September 17, 1975, was dismissed for lack of prosecution; and another charge arising out of the same incident, hunting deer during closed season, September 17, 1975, resulted in a suspended fine.
[2] Nothing said here should be taken as suggesting that these may not in law be grounds for termination where they are in fact the grounds for termination. The effect of what we say today is merely that these facts do not in law mandate termination.
[3] Miss. Code Ann. § 11-51-101(1) (Supp. 1990) exempts state agencies such as DWC from the general rule that the petitioner must timely file an appeal bond to confer jurisdiction. See Grand Gulf Military Monument Commission v. Cox, 492 So.2d 287 (Miss. 1986); Mississippi State Personnel Board v. Armstrong, 454 So.2d 912 (Miss. 1984).
[4] State law empowers the State Personnel Board to engage the services of certified court reporters to record and transcribe hearings before the Employee Appeals Board and to assess the reasonable costs thereof to the respondent state agency. Miss. Code Ann. § 25-9-132(5) (Supp. 1990). This transcript forms a part of the record on certiorari and is available to the "inferior tribunal," to the Circuit Court, and ultimately to this Court. See Nevada Ex Rel. Thompson v. Board of Equalization, 7 Nev. 83, 92 (1871).
[5] Gill is an employee in "state service." See Miss. Code Ann. §§ 25-9-107(b) and -121 (Supp. 1990).
[6] One interested legislator told DWC's chief law enforcement officer, "You are going to have to fire that damn Gill boy down there that you hired on the coast." Another intimated the same, adding "You're going to need me before I need you."