GRIFFIS, J.,
for the Court.
¶ 1. During the development of a new highway interchange over Interstate 20 in Meridian, Mississippi, the City of Meridian (“City”) chose Engineering Associates, Inc. (“EAI”) as the engineering firm. However, the Mississippi Transportation Commission (“MTC”) rescinded that agreement and chose a different engineering firm for the project. The MTC’s decision was appealed to the circuit court, and the circuit court reinstated the City’s agreement with EAI. The MTC now appeals, asserting that the circuit court erred by (1) failing to dismiss EAI’s appeal for lack of jurisdiction, (2) finding, that the decision of the MTC was arbitrary and capricious and lacked substantial evidence, and (3) ordering the MTC to perform a contract to which it was not a party. We find no error and affirm.
FACTS
¶ 2. In early 2002, the City and the MTC entered into a memorandum of understanding (“MOU”) to develop a new highway interchange over Interstate 20 to. service Meridian’s industrial park. The MOU authorized the City, subject to the MTC’s approval, to select an engineering firm to prepare preliminary and final plans and an environmental impact statement.
¶ 3. In December 2002, the City selected EAI for the design work and environmental study on the interchange. On March 8, 2005, the MTC voted to rescind the MOU with the City and select another engineering firm. The' reasons given by the MTC for rescinding the contract were that the selection process was tainted and the project was never submitted for approval to the Mississippi Department of Transportation (“MDOT”) or the Federal Highway Administration (“FHWA”), which made federal funding unavailable. Without the federal funds, the City would not be able to finance the project. No ■ explanation was given for the failure to forward the contract to the FHWA in a timely manner for approval. After rescinding the MOU, *8 the MTC advertised for and entered into a new engineering services contract with another company to complete the work started by EAI.
¶4. EAI appealed the decision of the MTC, which rescinded the MOU, to the Circuit Court of Hinds County and filed a bill of exceptions. The MTC filed a motion to dismiss, arguing that EAI failed to obtain a writ of certiorari to proceed with its appeal. The circuit court denied the motion to dismiss and entered an order finding the action of the MTC to be arbitrary and capricious and lacking substantial evidence. The circuit court ordered in its final judgment “that the March 8, 2005 Resolution of the MTC to Rescind the [MOU] and Authorizing the advertising, selection and negotiation of a new engineering service contract to replace the EAI contract is hereby set aside and held void and of no legal effect.” The circuit court ordered the MTC to “proceed with its duties and contractual responsibilities with regard to the EAI contract.” The MTC filed a motion for relief from the judgment under Mississippi Rule of Civil Procedure 60(b), arguing that it was not a party to the contract between EAI and the City. The circuit court denied the motion.
ANALYSIS

I. Did the circuit court have subject matter jurisdiction over this case?

¶ 5. The MTC argues that since no statutory appeals process is provided for appealing a decision of the MTC, EAI should have petitioned the circuit court for a writ of certiorari for review of the MTC’s decision. The MTC cites Gill v. Mississippi Department of Wildlife Conservation, 574 So.2d 586, 590 (Miss.1990), for the proposition that where no right of appeal is created by statute for a state agency, the appeal should be by writ of certiorari from the circuit court. The MTC argues that, since it was not a party to the contract between the MTC and the City, if EAI had filed a writ a certiorari, the circuit court could have addressed whether EAI was a proper party to the lawsuit.
¶ 6. “Jurisdictional questions are subject to de novo review.” Rayner v. Raytheon Co., 858 So.2d 132, 133(¶4) (Miss.2003).
¶ 7. The supreme court has repeatedly held that “a party has no right of appeal, except insofar as it has been given by law.” Gill, 574 So.2d at 590. Since no statutory law exists giving authority to appeal a decision of the MTC, we must determine whether EAI properly filed a direct appeal in circuit court rather than proceeding by writ of certiorari.
¶ 8. Mississippi Code Annotated section 11-51-93 (Rev.2002) states that “[a]ll cases decided by a justice of the peace ... may, within six months thereafter, on good cause shown by petition, supported by affidavit, be removed to the circuit court of the county, by writ of certiorari, which shall operate as a supersedeas.... ” Mississippi Code Annotated section 11-51-95 (Rev.2002) extends the reach of section 11-51-93 to “the judgments of all tribunals inferior to the circuit court, whether an appeal be provided by law from the judgment sought to be reviewed or not.” (Emphasis added).
¶ 9. The determination of whether an appeal from a decision of the MTC must be filed by writ of certiorari hinges on whether the MTC is an inferior tribunal as stated in section 11-51-95 and, if so, whether its decision was judicial or quasi-judicial in nature. See Bd. of Supervisors of Forrest County v. Melton, 123 Miss. 615, 623, 86 So. 369, 372 (1920) (“But it is not every act of an inferior tribunal that can be removed to and re-examined by a circuit court on a writ of certiorari, but *9 only such as are of a judicial or a quasi-judicial nature.”).
¶ 10. We agree with the circuit court that the MTC is not an inferior tribunal, and its decision to terminate the MOU was administrative in nature and not akin to a judgment rendered in a judicial or quasi-judicial proceeding. The supreme court in Gill found that the Mississippi Employees’ Appeals Board was an inferior tribunal within the meaning of the statute; thus, a writ of certiorari was the appropriate method of appeal for the Department of Wildlife Conservation to follow. Gill, 574 So.2d at 590-91. However, the findings in Gill were appealed from a designated appeals board. The findings here were from a MTC meeting. There was no hearing on the merits, and witnesses were neither sworn in nor guided through questioning. The minutes of the meeting were recorded on an audio tape that was transcribed for submission to the circuit court. The individuals who were present spoke informally, and no attorneys were present to question witnesses. We find that this meeting was purely administrative; therefore, a writ of certiorari was not the appropriate method of appeal in this case.[1] Accordingly, this issue is without merit.

II. Was the MTC’s decision to rescind the memorandum of understanding arbitrary and capricious and not supported by substantial evidence?

¶ 11. The MTC argues that the circuit court substituted its judgment for that of the MTC in finding its decision to be arbitrary and capricious and not supported by substantial evidence.
¶ 12. Our standard of review from a finding of an administrative agency is limited. Uniform Rule of Circuit and County Court 5.03, entitled “Scope of appeals from administrative agencies,” states:
On appeals from administrative agencies the court will only entertain an appeal to determine if the order or judgment of the lower authority:
1. Was supported by substantial evidence; or
2. Was arbitrary or capricious; or
3. Was beyond the power of the lower authority to make; or
4. Violated some statutory or constitutional right of the complaining party.
The actions of an administrative agency must be based on substantial evidence appearing in the record. Miss. State Tax Comm’n. v. Miss.-Ala. State Fair, 222 So.2d 664, 665 (Miss.1969). The “circuit court must look at the full record before it in deciding whether the agency’s findings were supported by substantial evidence.” Pub. Empolyees’ Ret. Sys. v. Marquez, 774 So.2d 421, 427(¶ 20) (Miss.2000). “While the circuit court performs limited appellate review, it is not relegated to wearing blinders.” Id. (citation and internal quotations omitted); Pub. Employees’ Ret. Sys. v. Howard, 905 So.2d 1279, 1284(¶ 15) (Miss.2005).
¶ 13. When “an administrative agency’s decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious.” Id. at (¶ 14); Marquez, 774 So.2d at 430(¶ 35). “Substantial evidence means something more than a ‘mere scintilla’ or suspicion.” Id. at 425(¶ 13). It has also been defined as “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Id. In sum, substantial evidence is evidence that “provides an ade *10 quate basis of fact from which the fact in issue can be reasonably inferred.” Howard, 905 So.2d at 1285(¶ 16); Pub. Employees’ Ret. Sys. v. Dishmon, 797 So.2d 888, 892(¶ 13) (Miss.2001).
¶ 14. The Mississippi Supreme Court held that an agency’s decision is “ ‘arbitrary’ when it is not done according to reason or judgment, but depending on the will alone.” Marquez, 774 So.2d at 429(¶ 34). Arbitrary has also been described as “... absolute in power, tyrannical, despotic, non-rational, ... implying either a lack of understanding of or a disregard for the fundamental nature of things.” OXY USA, Inc. v. Miss. State Tax Comm’n, 757 So.2d 271, 276-77(¶ 25) (Miss.2000). Furthermore, “[a]n act is ‘capricious’ if it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.” Marquez, 774 So.2d at 429-30(¶ 34).
¶ 15. There must be some basis found in the record to conclude that the MTC’s decision was based on “reason and judgment” and not just “the will alone.” “It is a logical and legal prerequisite to intelligent judicial review in [administrative] cases that [a] Board favor us with more than mere conclusory findings on each of these issues.” McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 324 (Miss.1992). An agency decision based on “[p]roof of surmise, conjecture, speculation or suspicion is not sufficient.” Miss. Real Estate Comm’n v. Ryan, 248 So.2d 790, 793 (Miss.1971) (citing 2 Am.Jur.2d Administrative Law § 393 (1962)).
¶ 16. The MTC’s argument that the MOU was terminable at will does not establish that the MTC’s decision to advertise, select, and negotiate a new engineering services contract to replace EAI was based on substantial evidence and/or was not arbitrary and capricious. The mere fact that the contract has a terminable-at-will provision is not conclusive of the issue before this Court. It certainly does not prove that the MTC had substantial evidence upon which to base its decision. Even though the contract may be terminable at will, the standard of review before this. Court requires some reason or basis to support the decision.
¶ 17. The MTC also asserts as substantial evidence “discussions that the project was not being moved along with a pace satisfactory to the City or to a part of the federal congressional delegation that participated in approval of federal funds for the project.” While EAI conceded that there were discussions that the project was not being moved along with a pace satisfactory to the City or to some of the federal congressional delegation that participated in approval of federal funds for the project, the obvious purpose and extent of such discussions were to encourage the MTC to quit holding up the progress of the project and to cooperate with the City in terms of facilitating the process of contract approval and obtaining the federal funding necessary for payment of the engineering services. The desire to expedite and/or move the project along, without more, does not support a decision to replace EAI as the engineer.
¶ 18. The MTC pointed to input from professional engineers and purported admissions by EAI’s counsel that there were significant problems in the relationship between the City and the MTC. David Foster and Harry Lee James were the only engineering professionals identified. Foster’s only role in the matter was simply to read the agenda items. While James participated in some of the relevant discussion, he did not offer any evidence in support of a decision to replace EAI as the engineer. In fact, it was James who ad *11 mitted that MDOT had simply failed to forward the EAI/Meridian Contract for FHWA approval.
¶ 19. It appears that the MTC’s brief was the first time it cited a poor working relationship between the City and the MTC as a reason for termination of the MOU and/or replacement of EAI as the engineer. This fact demonstrates the lack of substantial evidence in the record to support the MTC’s decision to terminate the MOU and/or replace EAI as the engineer. Further, a poor working relationship between the City and the MTC was never discussed as a reason to terminate the MOU or to replace EAI as the engineer.
¶ 20. The MTC claims that it received input constituting substantial evidence from the MTC personnel, including Foster, James, Larry “Butch” Brown, and Bill Minor, as well as an FHWA official, Andy Hughes, and EAI representatives, Tom Bryant and Mark Herbert. However, the MTC does not refer to specific examples or make specific references to the record. Instead, the MTC claims that the “statements set out in the facts herein indicate that there were questions concerning the manner in which EAI was selected by Meridian and questions concerning why, how, when, and if the contract between EAI and Meridian was ever presented to the FHWA.” There may have been questions raised concerning the manner in which EAI was selected. The record does not reveal that answers and/or responses were given that would support a decision to replace EAI as the engineer. Raising a question does not constitute substantial evidence to support a decision. With respect to why, how, when, and if the 'contract between EAI and the City was ever presented to the FHWA, the MTC/MDOT officials clearly acknowledged negligence on the part of the MDOT personnel for not forwarding the contract to FHWA for approval.
¶ 21. Based on the evidence in the record, the MTC did not reveal why it did what it did. There is no evidence that states why the MTC rescinded the MOU to advertise, select, and negotiate a new engineering service contract with another engineering firm, resulting in the replacement of EAI. MTC claims that its decision to terminate the MOU and hire a new engineer would expedite the design/construction process; however, MTC Commissioner Dick . Hall refuted that suggestion. Commissioner Hall pointed out that, at a minimum, there would be a ninety-day waiting period before any rescission of the MOU would take effect and that this action, if taken by the MTC, would actually extend the time frame for starting and completing the work. Further, Commissioner Hall stated that the MTC’s action to rescind the MOU and to advertise, select, and negotiate a new engineering service contract with another engineering firm would effectively take this contract away from EAI, because the MTC, not EAI or the City, failed to do its job.
¶ 22. James, the MDOT chief engineer, informed the MTC that because the MDOT had failed to forward the engineering services contract for FHWA approval, FHWA funds were not currently available to pay EAI for work performed to date. Hughes, an FHWA official, confirmed that the MTC had failed to forward the contract to the FHWA. Later in the proceeding, the Commission even reconfirmed its understanding of this fact. Hughes informed the Commission that the funds were earmarked for the project and were not going anywhere. He also could not say whether or not the contract would be approved if forwarded by the MDOT to the FHWA.
*12 ¶ 23. EAI representatives informed the MTC that: it had completed the environmental portion of its contract with the City (the work under the contract was underway); EAI had been selected pursuant to the appropriate MDOT standard operating procedure; EAI was ready to complete its contract; and the City wanted EAI to complete the contract. Commissioner Hall also presented a letter he received from Meridian’s mayor which expressed the mayor’s desire for EAI to continue to perform under the contract already in place.
¶ 24. In addition, counsel for EAI pointed out that the very terms of the MOU, which were drafted by the MTC, expressly stated that contracts made in reliance upon the MOU and are underway at the time of the termination would not be affected by the termination and such contracts would be allowed to conclude under its own terms.
¶ 25. At the March 8, 2005, MTC meeting, the MTC put forth no controverting evidence in the face of various issues raised in opposition to its proposed action. In fact, the MTC failed to even show insubstantial evidence in support of its action. There was not even a scintilla of evidence in support of the MTC’s decision to rescind the MOU and to negotiate a new engineering service contract.
¶ 26. The record indicates that the MTC’s decision was based on its own negligence and the unconfirmed speculation of staffers or people in the audience from other agencies. Even the MTC’s chairman acknowledged the lack of evidence for the MTC’s decision when he announced before the vote: “We can proceed ahead, and if we hear something in two weeks[,] we can undo what we did.” At a minimum, the MTC’s decision to rescind the MOU and to advertise, select, and negotiate a new engineering service contract with another engineering firm was motivated, at least in part, by the MTC’s own failure to forward the contract between the City and EAI to the FHWA pursuant to the MTC’s duties under the MOU.
¶ 27. The MTC’s decision to terminate the MOU and to advertise, select, and negotiate a new engineering service contract with another engineering firm was not based on substantial evidence. Based on the evidence contained in the record, such decision was both arbitrary and capricious. Accordingly, this issue has no merit.

III. Did the circuit court err in ordering the MTC to perform a contract to which it was not a party?

¶ 28. Finally, the MTC argues that the circuit court erred in ordering the MTC to complete a contract with EAI when the contract for engineering services was between EAI and the City.
¶ 29. The MTC argues that the circuit court was confused when it ordered specific performance under a contract to which the MTC was not a party. The MTC argues that no duties exist that it can perform with respect to EAI. We find that the circuit court was not confused when it issued its ruling. In its ruling, the circuit court stated, “Pursuant to the MOU, Meridian entered into an Engineering Services Contract (‘Contract’) with [EAI].... ” The contract between the City and EAI was clearly entered into in reliance on the MOU. Also, the funding for the project from which EAI was to be paid was dependent on the MTC obtaining federal funding for the project.
¶ 30. Therefore, we find that EAI was a beneficiary of the MOU and was a proper party to the appeal.
¶ 31. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS *13 APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, P.J., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. LEE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND JOINED IN PART BY IRVING, J. CARLTON, J., NOT PARTICIPATING.

. Although not briefed by the parties or asserted before the circuit court, it appears that this case could have been brought as a breach-of-contract claim. In such a case, the circuit court would have had proper jurisdiction.