578 So.2d 667 (1991)
MISSISSIPPI DEPARTMENT OF WILDLIFE CONSERVATION,
v.
Morris BROWNING and the Mississippi Employee Appeals Board.
No. 07-CA-59349.
Supreme Court of Mississippi.
April 10, 1991.
Rehearing Denied May 22, 1991.
Mike C. Moore, Atty. Gen., Wise, Alice D. Wise, Richard D. Mitchell, Al Nuzzo, Sp. Asst. Attys. Gen., Jackson, for appellant.
Mitchell M. Lundy, Sr., Lundy & Lundy, Grenada, for appellee.
Before ROY NOBLE LEE, C.J. and PRATHER and ROBERTSON, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Morris Browning, a conservation officer (game warden), received a pre-termination notice dated April 24, 1985, from the Mississippi Department of Wildlife Conservation (DWC). The DWC voted to terminate Browning effective June 21, 1985. Browning appealed his termination to the Mississippi Employee Appeals Board (EAB) and the hearing officer conducted a de novo hearing and ordered that Browning be reinstated with full benefits. An en banc panel of the EAB affirmed the order.
The DWC filed a petition for writ of certiorari to the Circuit Court of the First Judicial District of Hinds County. That court affirmed the EAB's decision and the DWC appeals the holding of the circuit court to this Court.

FACTS
The DWC received information that illegal transactions were taking place in the Grenada Lake area. Undercover agents John Boyte, Ott Jones, and Randy Carr were sent to Grenada County to investigate. On September 21, 1984, while camping at Grenada Lake, Boyte was approached by a lady camping nearby. Boyte told her that he wanted to buy some crappie (white perch). She told him that her boyfriend, Horace Browning, Morris Browning's twin brother, would sell him some. Horace was a commercial fisherman, and he could legally sell certain fish, such as catfish, but he could not sell game fish, e.g. crappie, bass, or bream.
On October 5, 1984, Boyte and Ott Jones went to Horace's trailer to buy some crappie. He told them to come back the next day. They returned on the 6th, but they saw a DWC vehicle in Horace's yard operated by Warden Morris Browning. They waited until Morris left, and then Horace sold them 11 pounds of crappie and 12 pounds of catfish.
Boyte and Jones returned on October 20, 1984, to purchase more crappie. They observed Morris and Horace remove an ice chest from Morris' DWC vehicle as they *668 were driving up. Morris left and Boyte apologized for pulling up with a DWC vehicle there. According to Boyte, Horace told them that it was alright, Morris was his twin brother and would not bother him. On that occasion, Boyte purchased 10 pounds of crappie. Horace got the fish out of the ice chest, which they saw Morris and Horace remove from the DWC vehicle.
On December 21, 1984, Boyte returned to purchase more crappie. While he was there, Morris drove up. All three of them were in Horace's shed while the transaction took place. Morris was never more than 3 or 4 feet away while Horace was weighing the fish. Boyte purchased 28 crappie. Morris had an opportunity to see the fish and the money exchange hands. No arrests were made at the time because there were several other investigations going on. Eventually, however, Horace pled guilty to selling game fish.
The DWC filed a complaint against Warden Morris Browning on March 11, 1985. Morris was convicted in justice court of failing to perform the duties of an officer. He appealed to the circuit court. The case ended in a mistrial and it was later dismissed on August 6, 1987.
Warden Browning also received a pre-termination letter and he was terminated on June 21, 1985. Warden Browning denied any wrongdoing and claimed that he did not know that his brother was illegally selling game fish.
LAW
I. DID THE EAB ERR IN REVERSING A STATE AGENCY DECISION WHICH WAS BASED UPON SUBSTANTIAL EVIDENCE?
II. DID THE EAB ERR IN REACHING A DECISION WHICH WAS NOT BASED ON SUBSTANTIAL EVIDENCE?
The Court will address issues one and two of the four issues presented, since these two issues decide and are dispositive of the case.

I.
The DWC contends that the EAB erred in reversing the DWC's action to terminate Warden Morris Browning, since the decision was based on substantial evidence. In Eidt v. City of Natchez, 421 So.2d 1225 (Miss. 1982), this Court held:
We have imposed one pole-star requirement upon administrative agencies when hearing a "contested case" [See Miss. Code Ann. § 25-43-3(b) (Supp. 1981)]: any decision of any administrative board or agency must be based upon substantial evidence appearing in the record.

Id. at 1232.
Upon termination of Warden Browning's employment, he appealed to the EAB and a hearing officer with that Board conducted a de novo hearing wherein undercover agents, John Boyte, Ott Jones and Randy Carr from the DWC, testified and photographs of the contraband fish were produced into evidence, all on the part of DWC. Warden Morris Browning and his brother, Horace Browning, testified for Warden Browning. The hearing officer reinstated Warden Browning to his position. Upon rehearing, an en banc panel of the EAB affirmed the hearing officer's decision.
We assume that the officers testified at the pre-termination hearing and that their reports and exhibits were also before the DWC. However, there is no record before us of the facts and evidence before the DWC at a pre-termination hearing, which was held on June 18, 1985. The DWC filed a petition for a writ of certiorari to the Circuit Court of the First Judicial District of Hinds County from the order of the EAB affirming the order that Warden Browning be reinstated with full benefits.
In Jesse Ty Gill v. Mississippi Department of Wildlife Conservation, 574 So.2d 586 (Miss.), this Court held that the EAB is a "tribunal inferior" within Miss. Code Ann. § 11-51-95 (Supp. 1988). The Gill court held:
That, as in Merritt v. State, 497 So.2d 811 (Miss. 1986), the writ of certiorari is alive and well as a vehicle to review the decisions of the Mississippi State Personnel Board where no other mode of appeal *669 is provided or available, within the limitations inherent in the writ.
.....
Should the record and proceedings below reflect a decision wholly unsupported by any credible evidence, we would regard that decision as contrary to law and, as a matter appearing on the face of the record or proceedings, subject to modification or reversal.
Id. (citing in part the lower court in Gill, supra). Therefore, we consider whether or not the decision of the EAB was supported by credible evidence. As stated in Gill, a decision unsupported by the evidence is by definition arbitrary and capricious.

II.
The record reflects that investigators, Ott Jones and John Boyte, went to Grenada Lake for the purpose of investigating the sale of game fish. On October 5, 1984, they contacted Horace Browning at his fish shed near the lake, inquiring whether he had any crappie for sale. Horace told them to come back the next day and he would have some. On October 6, 1984, they went back to Horace Browning's shed and the DWC truck was there. They waited for about an hour until Warden Morris Browning left in the truck, then went to the shed and bought eleven pounds of crappie from his brother, Horace Browning.
On October 10, 1984, Jones and Boyte were at the spillway on Grenada Lake observing the fish shed and trailer of Horace Browning. They saw the DWC truck come up and both Horace Browning and Warden Morris Browning were in the truck. They observed it for about an hour and the Brownings started unloading plastic bags of fish and taking them into the shed. The Brownings got an aluminum ice chest out of the back of the truck, set it up at the end of the shed, and then Jones and Boyte proceeded to the shed to buy game fish. Warden Morris Browning was there at the time the officers drove up behind Warden Browning's DWC truck and later the officers had to move the truck for him to leave. On that occasion, the officers bought ten pounds of crappie game fish.
Horace got the crappie out of the aluminum ice chest, which was the same chest the officers saw him and Warden Morris Browning take out of the truck. The chest had been in their view all the time since it was removed from the DWC truck. Boyte apologized to Horace for driving up while the DWC truck was there and Horace told them that it was alright, Morris was his twin brother and would not bother him.
On December 21, 1984, about three o'clock in the afternoon, Officer Boyte went to Horace Browning's place and when he drove into the driveway, Horace came up. Shortly afterwards, Warden Morris Browning drove up in a DWC vehicle. Officer Boyte got his ice chest, went into the shed and Warden Morris Browning walked in. Horace introduced Boyte to his brother, Warden Morris Browning. The ice chest with the fish in it was not over three or four feet from Warden Morris Browning as Horace began weighing the fish. Officer Boyte purchased 28 pounds of crappie at that time. The record itself discloses the following testimony by Officer Boyte with reference to the December 21, 1984, game purchase:
Q. Was that also the fish that you have in the ice chest?
A. Yes, I have five in the ice chest.
Q. I am almost scared to ask if we can look at them. Yes, let's open it up and take a look at it. (Ice chest is opened)
Q. That's crappie, that's white perch?
A. Yes, sir.
Q. You can put it back as far as I am concerned (Ice chest is closed) And those are the fish you purchased on the 21st day of December?
A. Yes, sir.
Q. From Mr. Horace Browning?
A. Yes, sir.
Q. While Mr. Morris Browning was standing there?
A. Yes, sir.
Q. When you say Mr. Morris Browning was standing there the entire time, did he, he was there and had an opportunity *670 to see both the fish and the money exchange hands?
A. Yes, sir, he did.
Q. Was there anybody else there besides the three of you?
A. No, sir.
Q. You did pay Mr. Horace Browning for the fish?
A. Yes, sir.
Q. Were you apprehensive at all about purchasing game fish with, excuse the expression, a Game and Fish officer standing there or driving up?
A. Well, the 10th and the 20th he made a remark, Horace did, that I didn't have to worry about, you know, didn't have to worry about it, that was his twin brother, Morris.
Q. So, you were not fearful that you were going to be arrested for the purchase of game fish?
A. I didn't think I would be, no, sir.
Photographic exhibits of the purchased crappie game fish are in the record. Those fish appear to be large, thick, and wide fish, commonly called "slabs" by crappie fishermen. They are huge as far as crappie go and easily distinguished from catfish by sight, feel or weight.
On several occasions the investigating officers went to the premises of Horace Browning for the purchase of game fish, and his brother, Warden Morris Browning, was present with the DWC truck. Warden Morris Browning helped his brother, Horace, transport the fish in a DWC truck, helped him unload the fish into Horace's fish shed and at least on one occasion was present three or four feet away when the fish were weighed and delivered to one or both of the investigators.
Warden Morris Browning had served as conservation officer/game warden for six years. He was an individual who was experienced in the sight, size, weight and feel of fish, game and non-game. He spent much time at the fish camp and fish shed of his brother, Horace Browning, who had the reputation of being a game fish poacher and game fish seller. Horace Browning had been convicted of violating the law for the same activities in which his brother, Warden Morris Browning, was helping him and apparently conspiring in with him.
It is incredible that Warden Morris Browning was unaware of the unlawful activities conducted by his twin brother, Horace Browning, particularly in view of the time Warden Browning spent with his brother, Horace, and the help rendered him in his unlawful activities. Therefore, it follows the decision of the EAB is unsupported by the evidence and, as was stated in Gill, supra, is arbitrary and capricious. Miss Code Ann. § 25-9-132(2) (Supp. 1990); Hood v. Mississippi Department of Wildlife Conservation, 571 So.2d 263 (Miss. 1990); Mississippi Forestry Commission v. Piazza, 513 So.2d 1242, 1246 (Miss. 1987); Eidt v. City of Natchez, at 1231-32. We are of the opinion that the overwhelming evidence supports and requires the termination of Warden Morris Browning.[1]
The judgment of the lower court is reversed and judgment is rendered here in favor of the Mississippi Department of Wildlife Conservation reinstating its order terminating the employment of Conservation Officer Morris Browning.
REVERSED AND RENDERED.
HAWKINS, P.J., and DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] We note that Miss. Code Ann. § 25-9-127 (Supp. 1990) relating to the State Personnel Board provides:

... and any employee who has by written notice of dismissal or action adversely affecting his compensation or employment status shall, on hearing and on any appeal of any decision made in such action, be required to furnish evidence that the reasons stated in the notice of dismissal or action adversely affecting his compensation or employment status are not true or are not sufficient grounds for the action taken ...