DIAZ, J.,
for the Court:
¶ 1. The Mississippi Department of Finance and Administration suspended Capitol Police Officer Lee Andrew Reese for thirty days without pay due to his failure to patrol the interior of the Old Capitol Budding on the night of an attempted burglary. Reese appealed to the Employee Appeals Board which set aside the suspension. The Department of Finance and Administration then sought review in the Hinds County Circuit Court, arguing that the decision of the Employee Appeals Board was arbitrary and capricious because (1) Reese failed to prove that the reasons for his suspension were either not true or were not sufficient grounds to warrant suspension, and (2) the Employee Appeals Board failed to make a specific finding that the decision to suspend Reese violated the published policies, rules and regulations of the State Personnel Board. The circuit court rejected these contentions and affirmed the Employee Appeals Board’s decision to set aside Reese’s suspension. We agree and affirm.
FACTS
¶2. Lee Andrew Reese began working for the Capitol Police Department in Jackson in February of 1995. On May 17, 1996, Reese was working the midnight shift and reported to police headquarters at approximately 9:20 p.m. to receive his post assignment. Reese’s supervisor instructed him to police Beats 10 and 11, which include the Old Capitol Museum, the War Memorial Building, the Department of Archives and History, and the Depot Building.
¶ 3. Aware of a recent attempted burglary at the New Capitol Building, Reese decided to patrol the exteriors of the buildings on his beat rather than the interiors so that he might better detect any forced entry. The radio dispatch log reveals that Reese checked the exterior of the Old Capitol at 10:05 p.m., 12:23 a.m., 2:15 a.m., and 5:38 a.m. Officer Milton Lollar relieved Reese at 6:19 a.m. and after patrolling the interior of the Old Capitol, Lollar discovered extensive damage to doors inside the building. An investigation concluded that the suspect or suspects had likely remained in the building after closing and then attempted to gain access to the gift shop and a staff office using a claw hammer. The suspect or suspects were unsuccessful and left the building through an emergency exit.
¶ 4. On May 22, 1996, the Department of Finance and Administration issued Reese a pre-suspension notice, advising him of his possible suspension due to his failure to patrol the interior of the Old Capitol. The notice further informed Reese of his right to respond to the charges at the pre-sus-pension conference held on June 18. Reese appeared and submitted both written and oral responses to the charge against him. The Department of Finance and Administration rejected Reese’s explanation and issued a suspension notice on July 8, 1996, informing Reese that he was being suspended without pay for thirty days for failing to patrol the inside of the Old Capitol Building. The offense for which Reese was suspended is categorized as a Group Three, Number 11 offense, described in the State Employee Handbook as “acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency’s duties to the public or other state employees.”
¶ 5. Reese appealed his suspension to the Employee Appeals Board and the hearing officer found that the Department failed to establish Reese was made aware that the Capitol Police Department’s standard operating procedure included patrolling the interior of the Old Capitol Building. The Employee Appeals Board, sitting en banc, affirmed the decision of the hearing officer. The Department sought review in the Hinds County Circuit Court via writ of certiorari. The circuit court affirmed the decision of the Employee Ap *1192 peals Board. It is this decision from which the Department appeals.
DISCUSSION
I. WHETHER THE EMPLOYEE APPEALS BOARD ERRED IN REVERSING THE ACTION OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION BECAUSE REESE FAILED TO PROVE THAT THE REASONS STATED IN THE NOTICE OF HIS SUSPENSION WERE EITHER NOT TRUE OR WERE NOT SUFFICIENT GROUNDS FOR THE ACTION TAKEN
¶ 6. The Department claims that the Appeals Board improperly shifted the burden of proof. Specifically, the Department contends that while the burden of proof was on Reese to establish that the reasons for his suspension were either not true or were not sufficient grounds for suspension, the Appeals Board placed the burden upon it to prove that it was justified in suspending Reese. We disagree.
¶ 7. The Department is correct in its assertion that the burden of proof was on Reese. “An employee who has received notice adversely affecting employment status or compensation shall be required to furnish evidence that the reasons stated in the notice are not true or are not sufficient grounds for the action taken.” Miss.Code Ann. § 25-9-127 (Rev. 1991); Employee Appeals Board Rule 18(C). Contrary to the Department’s assertions, the Appeals Board properly placed the burden of proof upon Reese. The hearing officer found that “[bjased upon the testimony and the facts presented in this ease, the action of the Appealing Party in exercising his discretion based upon his training and experience, should not result in the severe disciplinary action imposed by the Responding Party. The Appealing Party has sustained his required burden of proof.” (emphasis added).
¶ 8. The Department further contends that Reese failed to present sufficient evidence that the reasons for his suspension were either not true or were not sufficient grounds for suspension. It points to two documents which it claims instructed Reese to patrol the interior of the Old Capitol. At the hearing, Lieutenant Donnie Mullins, commander of the midnight shift, testified that in April of 1995, he prepared a document entitled “Capitol Police Check List.” The checklist provided as follows:
Beat 10 Old Capitol & War Memorial Building:
IOA. -Building Interior O/C
IOB. Pumps In Basement W/M
IOC. -Building Interior W/M
Mullins stated that he gave the checklist to his two shift commanders and a corporal for dissemination to all officers. When asked whether he knew for certain that Reese was given a copy of the checklist, Mullins responded that he did not. Assistant Chief of the Capitol Police Billy Jones provided testimony substantially similar to that of Mullins. He indicated that it was Mullins’s responsibility to ensure that all officers were given a copy of the checklist. Jones did not know whether Reese received a copy of the checklist. Interestingly, Jones noted that a new procedure has since been implemented whereby capi-tel police officers are now required to sign for any memoranda or written directives.
¶ 9. As further evidence that Reese was aware of his duty to check the interior of the Old Capitol, the Department cites an addendum to the standard operating procedures. The addendum, which was prepared by the director of the capítol police, Walter Tucker, provides that standard operating procedure for Beat 10 includes “making hourly checks of all floors of the Old Capitol Building, War Memorial and the Depot. [The] [o]fficer assigned to Archives is responsible for patrolling all floors of the Archives on an hourly basis. All officers assigned will be jointly respon *1193 sible for the complex parking lot perimeters.”
¶ 10. Sergeant John Yingling, midnight shift supervisor, testified that any addendum to the standard operating procedures is posted on a bulletin board at the Old Capitol which all officers are expected to check. Mullins and Jones similarly testified that Reese was expected to read the bulletin board regularly. On cross-examination, Jones did admit that materials posted on the bulletin board are sometimes removed by unauthorized personnel. Moreover, Mullins noted that unlike other addenda, this particular one was not added to the standard operating procedures manual.
¶ 11. Reese testified that he was familiar with the Mississippi State Capitol Police Policy and Procedures Manual. He further stated that he was unaware of any provision in the manual instructing him to patrol the interior of the Old Capitol. Reese stated that he had never received a copy of the checklist and that the first time he saw it was immediately prior to his suspension. He noted that he had “heard rumors from other officers that a checklist would be coming out or that one had come out before, but that Chief Tucker had gone against some of the things on it, and it had been rescinded.... ” As for the addendum, Reese claimed that he had never seen a copy of it. Unaware that it was Capitol Police policy to patrol the interior of the Old Capitol, Reese testified that he patrolled only the exterior of the building so that he might better detect any forced entry.
¶ 12. The hearing officer found that “[t]here was testimony as to the duties and responsibilities of the officers who patrol Beat 10, which consists of the Old Capital Complex, and includes the Old Capitol Building, War Memorial and Depot, and Archives, that there was a check-list and a Memorandum, setting out the duties of the officers assigned to Beat 10, however, there was a question as to whether either the check-list or the Memorandum were ever seen by the Appealing Party or any other officer working Beat 10.”
¶ 13. When a state agency appeals a decision of the Employee Appeals Board, this Court’s review of the decision is limited to a determination of whether the Appeals Board’s actions are arbitrary or capricious. A decision unsupported by any evidence is by definition arbitrary and capricious. Gill v. Mississippi Dept. of Wildlife Conservation, 574 So.2d 586, 591 (Miss.1990). There was sufficient evidence presented that Reese was unaware that it was the Capitol Police Department’s standard operating procedure to patrol the interior of the Old Capitol.
II. WHETHER THE EMPLOYEE APPEALS BOARD ERRED IN REVERSING THE DEPARTMENT OF FINANCE AND ADMINISTRATION’S SUSPENSION OF REESE WITHOUT MAKING A SPECIFIC FINDING THAT THE DEPARTMENT’S ACTIONS VIOLATED THE POLICIES, RULES AND REGULATIONS OF THE STATE PERSONNEL BOARD
¶ 14. The Department argues that the decision of the Appeals Board setting aside Reese’s suspension was arbitrary, capricious, and against the evidence because the Appeals Board failed to make a specific finding that the Department did not act in accordance with the published policies, rules, and regulations of the State Personnel Board. It relies upon Employee Appeals Board Rule 21(B), which provides that:
The Employee Appeals Board may modify an action of a responding agency but may not increase the severity of such action on the appealing party. If the responding agency has acted in accordance with the published policies, rules and regulations of the State Personnel Board, and if the personnel action taken by the responding agency is allowed under said policies, rules and regulations, *1194 the Employee Appeals Board shall not alter the action taken by the agency.
The Department contends that the Appeals Board was without authority to set aside Reese’s suspension because the Appeals Board failed to find that the suspension of Reese violated the published policies, rules and regulations of the State Personnel Board. Though the Appeals Board did not explicitly make such a finding, it did find that Reese was unaware that he was required to patrol the interior of the Old Capitol. Accordingly, Reese was suspended without cause, in violation of Miss.Code Ann. § 25-9-127 (Rev.1991) which provides that “No employee of any department, agency or institution who is included under this chapter or hereafter included under its authority, and who is subject to the rules and regulations prescribed by the state personnel system may be dismissed or otherwise adversely affected as to compensation or employment status except for inefficiency or other good cause.... ” Under Rule 21(B), the Appeals Board was within its power to modify the Department’s decision to suspend Reese.
¶ 15. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.