753 So.2d 486 (1999)
Larry ROUTT, Appellant,
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION, Appellee.
No. 1998-CC-01718-COA.
Court of Appeals of Mississippi.
November 16, 1999.
Larry Routt, Appellant, pro se.
Mark D. Ray, John Wesley Garrett, Jr., Attorneys for Appellee.
BEFORE KING, P.J., BRIDGES, DIAZ, AND IRVING, JJ.
BRIDGES, J., for the Court:
¶ 1. Larry Routt, O.D. seeks review of an order of the Attala County Circuit Court affirming the Mississippi Employment Security Commission's (MESC) grant of unemployment compensation benefits for Willie L. Mallett. Mallett applied for and was initially denied unemployment benefits by an MESC claims examiner after Routt discharged her from performing janitorial services in his office and home. She perfected her appeal through proper administrative procedures to the MESC Office of the Referee. The referee reversed the initial denial and granted Mallett unemployment benefits. Routt then appealed to the MESC Board of Review, which sustained the referee's decision.
*487 Routt filed another appeal to the circuit court where Judge Joseph L. Loper, Jr., affirmed the review board's decision to grant unemployment benefits. Aggrieved by this decision, Routt appealed to this Court for further judicial review. The following is the only issue before the Court:
I. WHETHER OR NOT THE CIRCUIT COURT APPLIED THE CORRECT STANDARD OF REVIEW IN AFFIRMING THE MESC BOARD OF REVIEW'S DECISION THAT THERE WAS SUBSTANTIAL EVIDENCE TO PROVE THAT THE EMPLOYEE DID NOT COMMIT DISQUALIFYING MISCONDUCT PURSUANT TO MISS. CODE ANN. § 71-5-513 (REV.1995).
Holding that this assignment of error is without merit, we affirm the judgement of the circuit court.

FACTS
¶ 2. Willie L. Mallett responded to a newspaper advertisement published in The Star Herald requesting an experienced full time maid to clean, cook and help with elderly family members and children. Mallett was employed by Dr. Larry Routt from January 24, 1997, through January 23, 1998. Mallett was initially hired as a maid for Routt's residence. Three months into this arrangement, Routt informed Mallett that she would also need to perform basic janitorial duties at his eye clinic on weekends. Mallett agreed and assumed the additional office cleaning duties along with the private residence although she was not financially compensated beyond her original salary in consideration for assuming these new responsibilities. Thereafter, Mallett performed janitorial duties at the clinic and private residence without incident. She was diagnosed with arthritis in her knees in July of 1997, but this fact went unreported to Routt because it did not, at that point, impede her performance of her assigned duties.
¶ 3. In early January of 1998, Routt asked Mallett to clean some scuff marks from the floor left by the chairs in the reception area of his clinic. Mallett tried unsuccessfully to get the floor clean, scrubbing the scuff marks for two hours, and later complained to Routt that scrubbing the floors on her hands and knees caused her physical pain. On January 23, 1998, Routt asked Mallett again to clean scuff marks from the floor in the reception area of the clinic suggesting that Mallett use a small stool as a seat to case her arthritic pain. Mallett declined and complained that such physical work was more suited for a man. A male janitor had scrubbed the floors and performed other janitorial tasks at the office prior to Mallett's assumption of those duties at the clinic. After Mallett refused to scrub the floors, Routt discharged her. Mallett concluded that she was discharged from her duties at the clinic and arrived at Routt's home the following Monday to continue her cleaning duties for the private residence. Upon arriving at Routt's home, Routt told Mallett that the person who cleaned the office would be the same person who cleaned the house, and since she refused to scrub the floor at the clinic, she was no longer needed for the house. Upon hearing this, Mallett's total separation from work began.

ANALYSIS
¶ 4. It should first be noted that Routt, acting pro se, filed an appellant's brief that substantially deviated in form and content from the requirements laid out in the Mississippi Rules of Appellate Procedure. This Court holds pro se parties to the same rules of procedure and substantive law as represented parties. Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 118 (Miss.1987). In his brief, Routt requests that the trial court decision be reversed and the original findings of the claims examiner be reinstated, but no specific assignment of error is made, no supporting authority is cited and barely one page is devoted to persuasive argument on the matter. It is not necessary to consider such a perfunctory argument unsupported by authority. R & S Development, *488 Inc. v. Wilson, 534 So.2d 1008, 1015 (Miss.1988)(citing Devereaux v. Devereaux, 493 So.2d 1310, 1314 (Miss.1986)). However, we will examine the record and determine whether an error occurred.
¶ 5. Review of any decision of a board of review by an appellate court falls under the purview of Miss.Code Ann. § 71-5-531 (Supp.1999). It states in pertinent part, "[i]n any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." Miss.Code. Ann. § 71-5-531 (Supp.1999); see also Miss. Employ. Sec. Comm'n v. Bell, 584 So.2d 1270, 1272 (Miss.1991); Wheeler v. Arriola, 408 So.2d 1381, 1384 (Miss.1982). The Mississippi Supreme Court explained this standard of review in Allen v. Mississippi Employment Security Commission:
This Court's standard of review of an administrative agency's findings and decisions is well established. An agency's conclusions must remain undisturbed unless the agency's order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights. A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise. Lastly, this Court must not reweigh the facts of the case or insert its judgment for that of the agency.
Allen v. Miss. Employ. Sec. Comm'n, 639 So.2d 904, 906 (Miss.1994) (citations omitted).
¶ 6. The MESC referee's decision to reverse the claims examiner's denial of benefits was based on a sufficient record, testimony, and substantial evidence. Mallett testified at the hearing the referee conducted where she answered questions and submitted a copy of the Star-Hearld advertisement into evidence. Routt was unable to attend the hearing, but sent a representative on his behalf who testified and submitted a sworn statement of other clinic employees regarding the incident. All testimony by Mallett regarding employment conditions agreed to by Routt and Mallett went uncontroverted because Routt and Mallett were the only two privy to the conversation. The referee weighed the testimony of Mallett's personal knowledge against that of Routt's representative's hearsay testimony and concluded that Mallett was dismissed, rather than quit of her own volition. Looking at the record submitted, this Court cannot say that the referee's decision was unsupported by substantial evidence, nor was it arbitrary or capricious. It is, of course, well within the agency's scope of power to accept appeals and overturn decisions within their administrative agency. No assertion was made that anyone's constitutional rights were violated and no evidence appears in the record to support such a claim, if offered.
¶ 7. While Routt did not specifically raise the issue of misconduct, the MESC referee considered whether Mallett's actions would be defined as disqualifying misconduct, thus denying her unemployment benefits. Based upon the testimony and evidence presented at the hearing, the referee determined that Mallett's refusal to scrub the floors was reasonable and therefore insufficient to serve as disqualifying misconduct. An employer has the burden of proving disqualifying misconduct by substantial, clear, and convincing evidence. Sprouse v. Miss. Employ. Sec. Comm'n, 639 So.2d 901, 903 (Miss.1994). Moreover, the Mississippi Supreme Court has held that acts of an employee which may warrant termination of employment do not necessarily rise to the level of misconduct to disqualify that employee from unemployment compensation. Allen, 639 So.2d at 907-08 (stating that inefficiency, unsatisfactory conduct, inept performance, or good faith errors in judgment or discretion are not considered *489 misconduct within the statute); see also Bell, 584 So.2d at 1272 (finding no substantial evidence of misconduct existed or met the level of the clear and convincing standard, and no wilfulness could be reasonably inferred); Miss. Employ. Sec. Comm'n v. Phillips, 562 So.2d 115, 118 (Miss.1990) ("Misconduct imports conduct that reasonable and fair-minded external observers would consider a wanton disregard of the employer's legitimate interests.").
¶ 8. The referee found that although it seemed reasonable to ask a maid to scrub floors, Mallett previously attempted to scrub the floors and experienced physical complications. The referee considered the employer's request for her to scrub the floor unreasonable due to Mallett's physical ailment. It was the referee's opinion that Mallett lost her job at both Routt's private residence and clinic because of her refusal to scrub floors at the clinic. Under these circumstances, her conduct did not constitute misconduct as that term is used in the field of unemployment law thereby disqualifying her from unemployment benefits pursuant to Miss.Code Ann. § 71-5-513 (Supp.1999).
¶ 9. THE JUDGEMENT OF THE ATTALA COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.