BRIDGES, J.,
for the Court: '
¶ 1. On July 29, 1997, William L. Corley, a lieutenant at the Central Mississippi Correctional Facility (CMCF), was suspended under extraordinary circumstances and given a notice of administrative review. The notice stated that he was charged with a Group III, Number 11 offense:
Acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency’s duties to the public or to other state employees.
Specifically, on July 29, 1997, during a random drug sample, you submitted a urine sample that smelled of bleach. Upon investigation by Margaret Bing-ham, Warden of Security, you admitted that you had smoked marijuana on Sunday, July 27,1997.
¶ 2. After the administrative review hearing, the agency hearing officer recommended to the superintendent that Corley be terminated. On November 24, 1997, a hearing was held before the Mississippi Employee Appeals Board (EAB). The hearing officer reinstated Corley to his position with all back pay and benefits.
¶ 3. The Mississippi Department of Corrections (MDOC) filed a request for review before the full board of the EAB. On June 30, 1998, the full board affirmed the hearing officer. The Hinds County Circuit Court on December 28, 1998, entered its order affirming the EAB.
¶4. Aggrieved, the issues the MDOC argues are as follows:
I. WHETHER THE CIRCUIT COURT AND THE EMPLOYEE APPEALS BOARD ERRED IN AFFIRMING THE HEARING OFFICER’S ARBITRARY AND CAPRICIOUS DECISION TO SET ASIDE MDOC’S TERMINATION OF EMPLOYEE AFTER EMPLOYEE ADMITTED TO DRUG USE?
II. WHETHER DUE TO CORLEY’S CONDUCT, HIS CONTINUED EMPLOYMENT WITH THE MDOC WOULD CONSTITUTE NEGLIGENCE ON PART OF THE AGENCY?
¶ 5. We find that the EAB’s decision to reinstate Corley was unsupported by any evidence; therefore, by definition it was arbitrary and capricious. We reverse and render.
FACTS
¶ 6. William L. Corley was hired May 1, 1996 as a Correctional Administrator I, as a sergeant, with the MDOC. Sometime in January or February of 1997 he was promoted to Correctional Administrator II. At the time of termination, Corley had achieved the rank of lieutenant and Assistant Unit Administrator at CMCF.
¶ 7. On April 18, 1997, Corley received a letter of suspension which contained an erroneous report that Corley had tested positive for cocaine use on a random drug test. Corley telephoned the testing company, and they told him that there had been a mistake and that he needed to contact his personnel department. He contacted the personnel department and the department confirmed that he had not tested positive for cocaine. Corley wrote his supervisors a letter. In this letter, Corley told his supervisors that even though the cocaine charge was a mistake, he did have problems with marijuana use and was going to go into treatment. On *868 May 1, 1997, Corley began a drug treatment program at Jackson Recovery Center. He successfully completed the intensive outpatient program, and he then was transferred to the after care program. Corley received a Certificate for Successful Completion.
¶ 8. In January of 1997, the MDOC instituted random employee drug testing for employees in security. This policy was amended in July 1997 to include all MDOC employees. The employees are randomly selected by computer once a month. The employees are then notified on the day of testing that they need to submit to a drug test.
¶ 9. On July 29, 1997, random drug testing occurred at CMCF. Warden Margaret Bingham, Warden of Security at CMCF, testified that the testing was going well until she received a telephone call from one of her captains. The captain notified Bingham that the registered nurse that was responsible for collecting the specimens had contacted him and stated that she had received a specimen that smelled of bleach. Bingham instructed the captairi'"-to bring the person that had provided the urine sample to her office. .Corley came to Bingham’s office with the captain. Corley asked Bingham, “do you want me to tell you the truth or what you want to hear?” She told him to tell the truth. He stated that he had painted his house and he used gasoline and bleach to clean the paint off his hands, therefore the reason for the urine smelling of bleach. However, after giving this explanation, he then admitted to smoking marijuana on July 27, 1997, two days earlier.
¶ 10. Based upon this admission, Bing-ham prepared a Suspension with Pay Notice and Notice of Administrative Review Hearing. David Fondren is the Administrative Hearing Officer for the MDOC. After the hearing, Fondren made a finding of fact and recommendation that Corley be terminated.
¶ 11. Corley appealed his termination to the EAB. At this hearing several witnesses testified as to the events that took place that day, and as to Corley’s past work record of being a good employee. Also admitted into evidence were the MDOC “Notice of Drug Testing Program” and the Drug-Free Workplace Act of 1988.
¶ 12. Fondren was called to testify for the MDOC. Fondren testified that the MDOC has a policy statement which prohibits employees from using or possessing controlled or illegal substances on or off of the work site. Fondren stated that the issue at Corley’s agency hearing was whether he had admitted to smoking marijuana. He stated that Corley admitted at his hearing that he had smoked marijuana. Fondren stated that Corley did not come forward prior to his selection for testing on July 29 and notify anybody that he had relapsed and smoked marijuana on July 27. Rather, Corley did not admit to his drug use until he had been directed to submit to a test, and the MDOC was forced to investigate whether he had tampered with the sample.
_¶ 13. After hearing all the evidence and considering the same, the EAB hearing officer in his brief opinion and order found that the MDOC had instituted the Drug-Free Workplace Act of 1988 and that “Respondent did not seek to allow the Appellant to obtain treatment as the policy requires prior to termination because he was in treatment.” Further “[t]he Respondent established the policy and it failed to follow the policy that would have allowed for the Appellant to seek treatment prior to his termination. He was never informed of any available options as it relates to the drug policy.” This decision was affirmed by the full EAB and the circuit court.
STANDARD OF REVIEW
¶ 14. “An agency’s conclusions must remain undisturbed unless the agency’s order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one’s constitu *869 tional rights.” Routt v. Mississippi Employ. Sec. Comm’n, 753 So.2d 486 (¶ 5) (Miss.Ct.App.1999) (quoting Allen v. Mississippi Employ. Sec. Comm’n, 639 So.2d 904, 906 (Miss.1994)). “Should the record and proceedings below reflect a decision wholly unsupported by any credible evidence, we would regard that decision as contrary to law and ... subject to modification or reversal.” Mississippi Dept. of Wild Life Conservation v. Browning and the Mississippi Employ. Appeals Bd., 578 So.2d 667, 669 (Miss.1991) (quoting Gill v. Mississippi Dept. of Wildlife Conservation, 574 So.2d 586, 591 (Miss.1990)). “A decision unsupported by any evidence is by definition arbitrary and capricious.” Department of Fin. and Admin. v. Reese, 751 So.2d 1189 (¶ 13) (Miss.Ct.App.1999) (citing Gill, 574 So.2d at 591).
ANALYSIS
¶ 15. The MDOC argues that no policy requires it to allow an employee who tests positive for drug use or who, upon being required to submit to a drug test admits to drug use, to be given an opportunity to obtain treatment prior to termination. As stated above, the EAB hearing officer found the MDOC failed to allow Corley to obtain treatment as the policy requires prior to termination because he was in treatment. The full board of the EAB quoted the above language and affirmed. The Circuit Court of Hinds County found that there was no reason to disturb the decision of the EAB. The policy upon which the EAB relied upon, the Drug-Free Workplace Act, is as follows:
Any employee who feels that he/she has developed an addiction or dependence on alcohol or drugs is encouraged to seek assistance. Requests for assistance will be confidential. Employees will be assisted with referrals to substance abuse assistance/rehabilitation programs.
Rehabilitation itself is the responsibility of the employee. An employee seeking medical attention for alcohol or drug addiction may be entitled to benefits under the state health insurance plan. Any employee of the MDOC may be granted leave to avail himselfdierself of a substance abuse assistance/rehabilitation program. The Department reserves the right to require certified medical statements in order to determine under what conditions employees will be permitted to return to • work.
¶ 16. Corley states that based upon the above quoted policy it is clear that the MDOC violated their own policy by not first offering him treatment before his termination. He states that the evidence was clear that he admitted to a drug problem and voluntarily sought treatment. When the July 29, 1997 random test was taken and he admitted to a relapse, this admission fell on unconcerned ears.
¶ 17. What is clear from the record is that when Corley came forward in April of 1997 and admitted to drug use his supervisors did not reprimand him, but encouraged him in his decision to seek treatment. Corley entered treatment on May 1, 1997. After attending this treatment program Corley received a Certificate for Successful Completion. Corley never came forward to admit to a relapse or to seek further assistance. It was not until he was questioned for possible tampering of his urine sample did Corley come forward to admit his relapse into the use of illegal drugs.
¶ 18. No policy of the MDOC requires it to offer rehabilitation prior to termination when an employee tests positive for illegal drug use or who admits to illegal drug use. “A decision unsupported by any evidence is by definition arbitrary and capricious.” Reese, 751 So.2d at 1193 (¶ 13) (citing Gill, 574 So.2d at 591). The decision by the EAB is arbitrary and capricious as it is wholly unsupported by any evidence.
¶ 19. Although we need not address MDOC’s second issue, as the first is decisive, by way of admonition we find that it is undisputed that Corley, a law enforce *870 ment officer, possessed and used illegal drugs. A law enforcement officer who willfully and knowingly possesses and uses illegal drugs is most certainly unfit to work in a facility where offenders have been convicted for similar conduct. The purpose of this Drug-Free Workplace Act is to ensure that the MDOC operates in the safest manner possible by ensuring that these employees are free from the effects of drugs. The MDOC has an institutional interest in prison security and the urgent need to ensure public safety by upholding drug screening for persons in safety-sensitive jobs. The ramifications of looking the other way when prison security admits to using illegal substances are enormous. Prison security demands that those who have contact with inmates must be alert at all times. The MDOC has a very authentic interest in assuring that the activities of prison security who come into daily contact with inmates are not hampered by drugs and are fully capable of performing their duties. The institutional interest in prison security is a central one.
¶ 20. We find that the EAB and the circuit court in affirming the EAB erroneously held that the above quoted policy required the MDOC to allow Corley to obtain drug- treatment prior to termination. The decision of the EAB and affir-mance by the circuit court was arbitrary and capricious as it was unsupported by any evidence. We therefore reverse and render.
¶ 21. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. IRVING CONCURS WITH SEPARATE WRITTEN OPINION.